IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THERMO FISHER SCIENTIFIC INC. and THERMO FISHER SCIENTIFIC (BREMEN) GMBH, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| AGILENT TECHNOLOGIES, INC., | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## <u>COMPLAINT FOR PATENT INFRINGEMENT</u>

Plaintiffs Thermo Fisher Scientific Inc. and Thermo Fisher Scientific (Bremen) GmbH (collectively, "Thermo Fisher") by and through their undersigned attorneys, complains and alleges against Defendant Agilent Technologies, Inc. ("Agilent") as follows:

### THE PARTIES

1.      Plaintiff Thermo Fisher Scientific Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 168 Third Avenue, Waltham, Massachusetts, 02451.  It is a world leading supplier of analytical instruments, equipment, consumables and laboratory supplies, including innovative technologies for mass spectrometry, elemental analysis, molecular spectroscopy, sample preparation, informatics, fine and high-purity chemistry production, cell culture, RNA interference analysis and immunodiagnostic testing.

2.      Plaintiff Thermo Fisher Scientific (Bremen) GmbH is a subsidary of Thermo Fisher Scientific Inc. and is a German corporation with its principal place of business at Hanna-Kunath-Str. 11, 28199 Bremen, Germany.

3.     Upon information and belief, defendant Agilent is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5301 Stevens Creek Boulevard, Santa Clara, California 95051.

## JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the patent laws of the United States (Title 35, United States Code).

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has personal jurisdiction over Agilent because, on information and belief, Agilent is a Delaware corporation and transacts business in Delaware. In addition, on information and belief, Agilent is registered to conduct business within Delaware and maintains as a registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. Agilent also has research and development facilities at 2850 Centerville Rd., Wilmington, DE 19808.

7.     This Court further has personal jurisdiction over Agilent because, on information and belief, Agilent transacts continuous and systematic business within Delaware. Moreover, this Court has personal jurisdiction over Agilent because, on information and belief, this lawsuit arises out of Agilent's infringing activities including, without limitation, Agilent's distributing, selling and/or offering to sell infringing products in Delaware, and/or importing infringing products and components into Delaware. Finally, this Court has personal jurisdiction over Agilent because, on information and belief, Agilent has made, used, sold, offered for sale and/or imported their infringing products and placed such infringing products in the stream of interstate

2

commerce with the expectation that such infringing products would be used, distributed, sold and/or offered for sale within Delaware.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

### THE ASSERTED PATENTS

9.      On February 24, 2015, U.S. Patent No. RE45,386 ("the '386 patent"), entitled "Means for Removing Unwanted Ions from an Ion Transport System and Mass Spectrometer," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Philip Marriott.  A copy of the '386 patent is attached as Exhibit A.

10.     The '386 patent is a reissue patent of U.S. Patent No. 7,202,470 ("the '470 patent"), which was duly and legally issued by the USPTO on April 10, 2007.

11.      On June 12, 2007, U.S. Patent No. 7,230,232 ("the '232 patent"), entitled "Means for Removing Unwanted Ions from an Ion Transport System and Mass Spectrometer," was duly and legally issued by the USPTO to Philip Marriott.  A copy of the '232 patent is attached as Exhibit B.

12.     On June 9, 2015, U.S. Patent No. RE45,553 ("the '553 patent"), entitled "Mass Spectrometer and Mass Filters Therefor," was duly and legally issued by the USPTO to Philip Marriott.  A copy of the '553 patent is attached as Exhibit C.

13.     The '553 patent is a reissue patent of U.S. Patent No. 7,211,788 ("the '788 patent"), which was duly and legally issued by the USPTO on May 1, 2007.

14.     By lawful assignment, plaintiff Thermo Fisher Scientific Inc. is the owner of all rights, title and interest in and to the '553 patent.

15.     By lawful assignment, plaintiff Thermo Fisher Scientific (Bremen) GmbH is the owner of all rights, title and interest in and to the '386 and '232 patents.

**THE ACCUSED DEVICES**

16.     On information and belief, Agilent began marketing the Agilent 8800 ICP-QQQ

Mass Spectrometer (the "8800") in the United States in 2012.

17.     On information and belief, Agilent began marketing the Agilent 8900 ICP-QQQ

Mass Spectrometer (the "8900") in the United States in 2016.

18.     The 8800 and 8900 (collectively, the "Accused Devices") each comprise an

inductively-coupled plasma ("ICP") ion source, two quadrupoles separated by an octopole, and

an ion detector.  The quadrupoles are referred to in Agilent's literature as "Q1" and "Q2."  The

octopole in each of the Accused Devices is within a gas chamber, which can be filled with gas

selected to break up or react with ions in the ion beam.  The gas chamber can also be referred to

as a collision chamber, reaction chamber, gas cell, collision cell, reaction cell, collision reaction

cell, ORS, etc.  (Agilent 8800 Triple Quadrupole ICP-MS Winter Plasma Conference 2012

Posters, Agilent Technologies, Inc., 4 (2012),

https://www.agilent.com/cs/library/applications/5990-9755EN_8800_ICPQQQ_WPC2012.pdf

(attached as Exhibit D) ("Agilent Posters").)

19.     Agilent refers to the 8900 as the "2nd generation" of the 8800.  (See, Agilent 8900

Triple Quadrupole ICP-MS[:]  Leave Interferences Behind with MS/MS, Agilent Technologies,

Inc., 2 (2016), http://www.agilent.com/cs/library/brochures/5991-6900EN.pdf (attached as

Exhibit E).)

20.     The 8800 and 8900 are structurally and operationally similar.  (Compare Ex. D,

p. 4 (Fig. 1) with Ex. E, pp. 6-7.)

**COMMUNICATIONS BETWEEN THE PARTIES / REISSUE PROCEEDINGS**

21.    Thermo Fisher informed Agilent by letter on November 9, 2012 that the 8800 infringes the '470, '232 and '788 patents.  The letter identified representative infringed claims from each of the identified patents and evidence from the Agilent Posters.

22.    Agilent responded by letter on January 19, 2013, alleging that the '470, '232 and '788 patents are invalid.  Agilent identified multiple prior art references.

23.    Thermo Fisher sent another letter on March 29, 2013 explaining that Agilent's invalidity arguments were flawed.  The letter requested that Agilent cease and desist from manufacturing, importing, using and/or selling the 8800.  The letter also included an invitation to discuss a possible license for the '470, '232 and '788 patents.

24.    Agilent responded by letter on April 26, 2013, refusing to negotiate a license at that time.

25.    Thermo Fisher submitted the '470 patent to the USPTO for reissue proceedings on September 19, 2013.  During reissue, Thermo Fisher submitted in an information disclosure statement ("IDS") each of the references cited by Agilent in its letters.  The '470 patent reissued as the '386 patent on Feb 24, 2015.

26.    Thermo Fisher also submitted the '788 patent to the USPTO for reissue proceedings on September 19, 2013.  During reissue, Thermo Fisher submitted in an information disclosure statement ("IDS") each of the references cited by Agilent in its letters.  The '788 patent reissued as the '553 patent on June 9, 2015.

**COUNT ONE**
**Agilent's Direct Infringement of the '386 Patent**

27.    Thermo Fisher incorporates by reference each of the allegations set forth in paragraphs 1-26 above.

5

28.     On information and belief, Agilent, without authority, has directly infringed and continues to directly infringe the '386 patent, under 35 U.S.C. § 271(a), at least by making, importing, distributing, selling, offering for sale and/or using within the United States the Accused Devices.  On information and belief, and, by way of example only and not limitation, the Accused Devices practice each limitation of at least claim 28 of the '386 patent.

29.     Claim 28 of the '386 patent is directed to:  "A mass spectrometer comprising:  an inductively coupled plasma ion source for generating ions from a sample, the generated ions including first atomic ions having a first mass-to-charge ratio and artefact ions having a mass-to-charge ratio that interferes with the first mass-to-charge ratio; an ion optical device disposed to receive at least a portion of an ion beam generated by the ion source, the ion optical device being configured to mass select at least a portion of the ion beam generated by the ion source at the first mass-to-charge ratio, thereby removing, from the ion beam, ions not having the first mass-to-charge ratio; a collision cell disposed to receive at least a portion of a mass selected ion beam from the ion optical device and configured to remove, from the mass selected ion beam, artefact ions having a mass-to-charge ratio that interferes with the first mass-to-charge ratio, the ion optical device being configured substantially to minimize the formation in the collision cell of interfering artefact ions having the first mass-to-charge ratio; and a mass analyzer disposed to receive at least a portion of the mass selected ion beam from the collision cell, the mass analyzer being configured to mass analyze the received ion beam at the same mass-to-charge ratio as the ion optical device, wherein the mass analyzer is configured to detect the first atomic ions when the same mass-to-charge ratio is the first mass-to-charge ratio."

30.     The Accused Devices satisfy the requirement in claim 28 that the mass spectrometer comprises "an inductively coupled plasma ion source for generating ions from a

6

sample."  The Agilent Posters state, for example, that "[t]he ion source of the ICP-MS is an

inductively coupled plasma (ICP) at atmospheric pressure."  (See, e.g., Ex. D, p. 9.)

      31.    The Accused Devices satisfy the requirement in claim 28 that the mass

spectrometer "generate[s] ions including first atomic ions having a first mass-to-charge ratio and

artefact ions having a mass-to-charge ratio that interferes with the first mass-to-charge ratio."

The Agilent Posters state, for example, that "ICP-MS . . . detection capability is often limited in

real applications by two major factors:  contamination and spectral interference."  (See, e.g., id.

at 4.)  The Agilent Posters further state that "[i]n conventional ICPMS, all ions generated in the

ion source enter the cell pressurized by various cell gases, and some of the interference ions are

removed.  On the other hand, the new system places Q1 in front of the cell.  In MS/MS mode, Q1

is driven as mass filter with unit mass resolving power.  As a result, only the selected ions whose

mass is the same as the targeted analyte ion can pass through Q1 and enter the cell."  (See, e.g.,

id. at 9; see also id. at 12, Fig. 9.)  The Agilent Posters also illustrate the generation and detection

of atomic ions.  (See, e.g., id. at 12, Fig. 9.)

      32.    The Accused Devices satisfy the requirement in claim 28 that the mass

spectrometer comprises "an ion optical device disposed to receive at least a portion of an ion

beam generated by the ion source, the ion optical device being configured to mass select at least

a portion of the ion beam generated by the ion source at the first mass-to-charge ratio, thereby

removing, from the ion beam, ions not having the first mass-to-charge ratio."  See, for example,

Agilent's representations set forth in Paragraph 31.  (See, e.g., id.)

      33.    The Accused Devices satisfy the requirement in claim 28 that the mass

spectrometer comprises "a collision cell disposed to receive at least a portion of a mass selected

ion beam from the ion optical device and configured to remove, from the mass selected ion

beam, artefact ions having a mass-to-charge ratio that interferes with the first mass-to-charge ratio, the ion optical device being configured substantially to minimize the formation in the collision cell of interfering artefact ions having the first mass-to-charge ratio." The Agilent Posters state, for example, that "[t]he use of a collision/reaction cell, which is located between the ion extraction lenses and the quadrupole mass filter and pressurized using various inert or reactive gases, is now widely accepted in quadrupole ICP-MS as a means to reduce spectroscopic interferences." (See, e.g., id. at 8.) The Agilent Posters further state that "[b]oth Q1 and Q2 mass setting (m/z) is 103 but the proposed configuration has the advantage over the conventional ICP-MS in terms of simple reaction in the cell because Q1 can preselect the ion species that enter the cell, and reject the ions that may react with NH3 to form new interfering products at m/z=103." (Id. at 12; see also Fig. 9 (reproduced below).)



**Figure 9.** Principle of operation to detect Rh in Pb matrix by $NH_3$ mode.

34.     The Accused Devices satisfy the requirement in claim 28 that the mass spectrometer comprises "a mass analyzer disposed to receive at least a portion of the mass selected ion beam from the collision cell, the mass analyzer being configured to mass analyze the received ion beam at the same mass-to-charge ratio as the ion optical device, wherein the mass analyzer is configured to detect the first atomic ions when the same mass-to-charge ratio is the

first mass-to-charge ratio." See, for example, Agilent's representations set forth in Paragraph 33. (See, e.g., id.)

35.     As a result of Agilent's infringement of the '386 patent, Thermo Fisher has suffered and will continue to suffer damages.

36.     Agilent's infringement of the '386 patent is willful, making this an exceptional case and entitling Thermo Fisher to enhanced damages and attorneys' fees. Agilent knew of its infringement of the '386 patent and its pre-reissue predecessor, the '470 patent, no later than November 9, 2012.

37.     Thermo Fisher has been irreparably harmed by Agilent's infringement of the '386 patent and will continue to be harmed unless Agilent's infringing conduct is restrained and enjoined by order of this Court.

## COUNT TWO
### Agilent's Induced Infringement of the '386 Patent

38.     Thermo Fisher incorporates by reference each of the allegations set forth in paragraphs 1-37 above.

39.     On information and belief, Agilent, without authority, has actively induced and continues to actively induce infringement of one or more claims of the '386 patent under 35 U.S.C. § 271(b) by, among other things, intentionally instructing or otherwise encouraging others to use the Accused Devices within the United States in a manner that infringes one or more claims of the '386 patent.

40.     On information and belief, and, by way of example only and not limitation, Agilent induces infringement of claim 13 of the '386 patent by selling or otherwise distributing the Accused Devices and publishing materials instructing and encouraging the performance of

infringing acts using the Accused Devices.  The Agilent Posters are an example of one such publication.

41.     Claim 13 of the '386 patent is directed to:  "A method of operating a mass spectrometer that incorporates a collision cell pressurized with a target gas, the method comprising:  generating an ion beam by introducing a sample into a plasma, the ion beam including analyte ions having an analyte mass to charge ratio and unwanted ions; mass selecting at least a portion of the ion beam at the analyte mass to charge ratio; transmitting at least a portion of the mass selected ion beam into the collision cell, the mass selecting step being effective substantially to minimize the formation in the collision cell of interfering ions having the analyte mass to charge ratio; receiving at least a portion of the ion beam from the collision cell at a mass analyzer; and mass analyzing the received ion beam at the same analyte mass to charge ratio as in the mass selecting step."

42.     Agilent's prescribed methods of operating the Accused Devices satisfy the requirement in claim 13 that the mass spectrometer "incorporates a collision cell pressurized with a target gas."  See, for example, Agilent's representations set forth in Paragraph 33.  (See, e.g., id. at 8, 12, Fig. 9.)

43.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 13 method step of "generating an ion beam by introducing a sample into a plasma."  See, for example, Agilent's representations set forth in Paragraph 30.  (See, e.g., id. at 9.)

44.     Agilent's prescribed methods of operating the Accused Devices satisfy the requirement in claim 13 that "the ion beam includ[es] analyte ions having an analyte mass to charge ratio and unwanted ions."  See, for example, Agilent's representations set forth in Paragraph 31.  (See, e.g., id.)

10

45.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 13 method step of "mass selecting at least a portion of the ion beam at the analyte mass to charge ratio; transmitting at least a portion of the mass selected ion beam into the collision cell."  See, for example, Agilent's representations set forth in Paragraph 31.  (See, e.g., id.)

46.     Agilent's prescribed methods of operating the Accused Devices satisfy the requirement in claim 13 that "the mass selecting step [is] effective substantially to minimize the formation in the collision cell of interfering ions having the analyte mass to charge ratio."  See, for example, Agilent's representations set forth in Paragraph 33.  (See, e.g., id. at 8, 12, Fig. 9.)

47.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 13 method step of "mass analyzing the received ion beam at the same analyte mass to charge ratio as in the mass selecting step."  See, for example, Agilent's representations set forth in Paragraph 33.  (See, e.g., id. at 8, 12, Fig. 9.)

48.     As a result of Agilent's induced infringement of the '386 patent, Thermo Fisher has suffered and will continue to suffer damages.

49.     Agilent knew of the '386 patent and its pre-reissue predecessor, the '470 patent, and actively and intentionally induced infringement of the '386 and '470 patents no later than November 9, 2012.

50.     On information and belief, Agilent's induced infringement of the '386 patent is willful, making this an exceptional case and entitling Thermo Fisher to enhanced damages and attorneys' fees.

51.     Thermo Fisher has been irreparably harmed by Agilent's induced infringement of the '386 patent and will continue to be harmed unless Agilent's infringing conduct is restrained and enjoined by order of this Court.

## COUNT THREE
### Agilent's Direct Infringement of the '232 Patent

52.     Thermo Fisher incorporates by reference each of the allegations set forth in paragraphs 1-51 above.

53.     On information and belief, Agilent, without authority, has directly infringed and continues to directly infringe the '232 patent, under 35 U.S.C. § 271(a), at least by making, importing, distributing, selling, offering for sale and/or using within the United States the Accused Devices.  On information and belief, and, by way of example only and not limitation, the Accused Devices practice each limitation of at least claim 11 of the '232 patent.

54.     Claim 11 of the '232 patent is directed to: "The mass spectrometer of claim 1, wherein the mass spectrometer is configured such that the ion beam extends along a path that includes a first portion in which ions are transmitted along an axis and a second portion in which the ion beam is deflected off the axis upstream of the mass-to-charge analyzer."  Claim 1 of the '232 patent is directed to:  "A mass spectrometer, comprising:  an ion source for generating an ion beam from a sample introduced into a plasma, the beam containing unwanted gas components and artifact ions; a collision cell within an evacuation chamber, the collision cell being disposed to receive at least a portion of the ion beam from the ion source and arranged to be pressurized with a target gas for removing unwanted artifact ions from the ion beam in the collision cell; an ion optical device configured upstream of the collision cell to reduce gas loading from the ion source on the collision cell; and a mass-to-charge ratio analyzer disposed within an analyzing chamber and arranged to receive at least a portion of the ion beam from the collision cell and to mass analyze the received ion beam to produce a mass spectrum of the received ion beam."

55.     The Accused Devices satisfy the requirement in claim 11 that the mass spectrometer comprises "an ion source for generating an ion beam from a sample introduced into a plasma."  See, for example, Agilent's representations set forth in Paragraph 30.  (See, e.g., id. at 9.)

56.     The Accused Devices satisfy the requirement in claim 11 that "the beam contain[s] unwanted gas components and artifact ions."  See, for example, Agilent's representations set forth in Paragraph 31.  (See, e.g., id.)

57.     The Accused Devices satisfy the requirement in claim 11 that the mass spectrometer comprises "a collision cell within an evacuation chamber, the collision cell being disposed to receive at least a portion of the ion beam from the ion source and arranged to be pressurized with a target gas for removing unwanted artifact ions from the ion beam in the collision cell."  See, for example, Agilent's representations set forth in Paragraph 31.  (See, e.g., id.)

58.     The Accused Devices satisfy the requirement in claim 11 that the mass spectrometer comprises "an ion optical device configured upstream of the collision cell to reduce gas loading from the ion source on the collision cell."  See, for example, Agilent's representations set forth in Paragraph 31.  (See, e.g., id.)

59.     The Accused Devices satisfy the requirement in claim 11 that the mass spectrometer comprises "a mass-to-charge ratio analyzer disposed within an analyzing chamber and arranged to receive at least a portion of the ion beam from the collision cell and to mass analyze the received ion beam to produce a mass spectrum of the received ion beam."  See, for example, Agilent's representations set forth in Paragraph 33.  (See, e.g., id. at 8, 12, Fig. 9.)

60.    The Accused Devices satisfy the requirement in claim 11 that "the mass spectrometer is configured such that the ion beam extends along a path that includes a first portion in which ions are transmitted along an axis and a second portion in which the ion beam is deflected off the axis upstream of the mass-to-charge analyzer."  The Agilent Posters state, for example, that the "system has a configuration of quadrupole – collision/reaction cell – quadrupole that follows the off-axis extraction lenses (Omega Lens)."  (See, e.g., id. at 8, Fig. 1.)

61.    As a result of Agilent's infringement of the '232 patent, Thermo Fisher has suffered and will continue to suffer damages.

62.    On information and belief, Agilent's infringement of the '232 patent is willful, making this an exceptional case and entitling Thermo Fisher to enhanced damages and attorneys' fees.  Agilent knew of its infringement of the '232 patent no later than November 9, 2012.

63.    Thermo Fisher has been irreparably harmed by Agilent's infringement of the '232 patent and will continue to be harmed unless Agilent's infringing conduct is restrained and enjoined by order of this Court.

## COUNT FOUR
### Agilent's Induced Infringement of the '232 Patent

64.    Thermo Fisher incorporates by reference each of the allegations set forth in paragraphs 1-63 above.

65.    On information and belief, Agilent, without authority, has actively induced and continues to actively induce infringement of one or more claims of the '232 patent under 35 U.S.C. § 271(b) by, among other things, intentionally instructing or otherwise encouraging others to use the Accused Devices within the United States in a manner that infringes one or more claims of the '232 patent.

66.     On information and belief, and, by way of example only and not limitation, Agilent induces infringement of claim 30 of the '232 patent by selling or otherwise distributing the Accused Devices and publishing materials instructing and encouraging the performance of infringing acts using the Accused Devices.  The Agilent Posters are an example of one such publication.

67.     Claim 30 of the '232 patent is directed to: "The method of claim 23, wherein the ion beam includes a portion in which ions are transmitted along an axis, and the method comprises deflecting the ion beam off the axis upstream of the mass-to-charge analyzer."  Claim 23 of the '232 patent is directed to:  "A method of operating a mass spectrometer, the method comprising the steps of:  generating at an ion source an ion beam from a sample, the beam containing unwanted gas components and artifact ions from the ion source; reducing gas loading from the ion source on a collision cell, the reducing occurring upstream of the collision cell; pressurizing the collision cell with a target gas for removing unwanted artifact ions from the ion beam in the collision cell; receiving in the collision cell at least a portion of the ion beam substantially free of neutral gas components from the ion source; and receiving at least a portion of the ion beam from the collision cell in a mass-to-charge ratio analyzer."

68.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 30 requirement of "generating at an ion source an ion beam from a sample."  See, for example, Agilent's representations set forth in Paragraph 30.  (See, e.g., id. at 9.)

69.     The Accused Devices satisfy the requirement in claim 30 that "the beam containing unwanted gas components and artifact ions from the ion source."  See, for example, Agilent's representations set forth in Paragraph 31.  (See, e.g., id.)

15

70.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 30 requirement of "reducing gas loading from the ion source on a collision cell, the reducing occurring upstream of the collision cell."  See, for example, Agilent's representations set forth in Paragraph 60.  (See, e.g., id. at 8, Fig. 1.)

71.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 30 requirement of "pressurizing the collision cell with a target gas for removing unwanted artifact ions from the ion beam in the collision cell."  See, for example, Agilent's representations set forth in Paragraph 33.  (See, e.g., id. at 8, 12, Fig. 9.)

72.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 30 requirement of "receiving in the collision cell at least a portion of the ion beam substantially free of neutral gas components from the ion source."  See, for example, Agilent's representations set forth in Paragraph 60.  (See, e.g., id. at 8, Fig. 1; see also, p. 9, Table 1 (showing that the chamber containing the collision cell is under high vacuum).)

73.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 30 requirement of "receiving at least a portion of the ion beam from the collision cell in a mass-to-charge ratio analyzer."  See, for example, Agilent's representations set forth in Paragraph 33. (See, e.g., id. at 8, 12, Fig. 9.)

74.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 30 requirement that "the ion beam includes a portion in which ions are transmitted along an axis, and the method comprises deflecting the ion beam off the axis upstream of the mass-to-charge analyzer."  See, for example, Agilent's representations set forth in Paragraph 60.  (See, e.g., id. at 8, Fig. 1.)

16

75.     As a result of Agilent's induced infringement of the '232 patent, Thermo Fisher has suffered and will continue to suffer damages.

76.     Agilent knew of the '232 patent and actively and intentionally induced infringement of the '232 patent no later than November 9, 2012.

77.     On information and belief, Agilent's induced infringement of the '232 patent is willful, making this an exceptional case and entitling Thermo Fisher to enhanced damages and attorneys' fees.

78.     Thermo Fisher has been irreparably harmed by Agilent's induced infringement of the '232 patent and will continue to be harmed unless Agilent's infringing conduct is restrained and enjoined by order of this Court.

**COUNT FIVE**
**Agilent's Direct Infringement of the '553 Patent**

79.     Thermo Fisher incorporates by reference each of the allegations set forth in paragraphs 1-78 above.

80.     On information and belief, Agilent, without authority, has directly infringed and continues to directly infringe the '553 patent, under 35 U.S.C. § 271(a), at least by making, importing, distributing, selling, offering for sale and/or using within the United States the Accused Devices.  On information and belief, and, by way of example only and not limitation, the Accused Devices practice each limitation of at least claim 1 of the '553 patent.

81.     Claim 1 of the '553 patent is directed to:  "Mass filter apparatus for filtering a beam of ions having mass/charge ratios in a range of mass/charge ratios to transmit ions of a selected mass/charge ratio in said range, comprising: an ion beam source for emitting the ion beam, first and second mass filter stages in series to receive the beam from the beam source, and a vacuum system arranged to maintain both the first and second filter stages at operating

17

pressures below $10^{-3}$ torr, wherein the first mass filter stage is configured to select for transmission on to the second filter stage only ions having a sub-range of mass/charge ratios which includes the selected mass/charge ratio, and the second mass filter stage is configured to select only ions of said selected mass/charge ratio."

82.    The Accused Devices satisfy the requirement in claim 1 that the mass spectrometer is "for filtering a beam of ions having mass/charge ratios in a range of mass/charge ratios to transmit ions of a selected mass/charge ratio in said range."

83.    The Accused Devices satisfy the requirement in claim 1 that the mass spectrometer comprises "an ion beam source for emitting the ion beam."  See, for example, Agilent's representations set forth in Paragraph 30.  (See, e.g., id. at 9.)

84.    The Accused Devices satisfy the requirement in claim 1 that the mass spectrometer comprises "first and second mass filter stages in series to receive the beam from the beam source."  See, for example, Agilent's representations set forth in Paragraph 33.  (See, e.g., id. at 8, 12, Fig. 9.)

85.    The Accused Devices satisfy the requirement in claim 1 that the mass spectrometer comprises "a vacuum system arranged to maintain both the first and second filter stages at operating pressures below $10^{-3}$ torr."  The Agilent Posters state, for example, that the chambers in which the first and second filter stages reside—the "Q1 chamber" and "Q2 chamber," respectively—each have a pressure of $5x10^{-4}$ Pa, which is below $10^{-3}$ torr.  (See, e.g., id. at 9, Table 1 (reproduced below).)

18

**Table 1.** Pressure and mean free path at each vacuum region. Mean free path is calculated assuming the collision of an Ar ion with an Ar gas molecule.

| | 5 stage vacuum system | | 4 stage vacuum system | |
|---|---|---|---|---|
| | Pressure [Pa] | Mean free path [m] | Pressure [Pa] | Mean free path [m] |
| Interface chamber | 500 | -- | 500 | -- |
| Ion lens chamber | 0.13 | $7.5 \times 10^{-2}$ | 0.2 | $5 \times 10^{-2}$ |
| Q1 chamber | $5 \times 10^{-4}$ | 19 | $2 \times 10^{-2}$ | 0.44 |
| ORS chamber | $2 \times 10^{-4}$ | 48 | $5 \times 10^{-4}$ | 19 |
| Q2 chamber | $5 \times 10^{-4}$ | 19 | $2 \times 10^{-4}$ | 48 |

86.     The Accused Devices satisfy the requirement in claim 1 that "the first mass filter stage is configured to select for transmission on to the second filter stage only ions having a sub-range of mass/charge ratios which includes the selected mass/charge ratio."  As explained in an Agilent's publication, Ed McCurdy et al., Agilent's New 8800 Triple Quadrupole ICP-MS: Hardware and Technology Guide, 49 AGILENT ICP-MS J. 4 (2012), http://cn.agilent.com/ cs/library/periodicals/public/5990_9942EN.pdf (attached as Exhibit F)), "the 8800 can be operated in 'single-quad' mode.  In this mode, Q1 can be operated [] as:  . . . [a]n adjustable bandpass filter, (where the Q1 low-mass and high-mass cutoffs are scanned synchronously with the Q2 mass).  In this mode, the ions outside the bandpass window are rejected by Q1 and so don't enter the cell, but otherwise this mode emulates a conventional quadrupole ICP-MS with a 'scanning' cell based on a quadrupole ion guide."

87.     The Accused Devices satisfy the requirement in claim 1 that "the second mass filter stage is configured to select only ions of said selected mass/charge ratio."  As explained in an Agilent's publication, Agilent 8800 Triple Quadrupole ICP-MS[:]  Technology Transformed.

Performance Redefined., Agilent Technologies, Inc., 7 (2015), http://www.agilent.com/cs/ library/brochures/5991-0079EN_8800_ICPQQQ_Brochure.pdf (attached as Exhibit G), "[t]he second high-frequency hyperbolic quadrupole filters the ions that emerge from the cell exit, passing only the target analyte/product ions to the detector."

88.     As a result of Agilent's infringement of the '553 patent, Thermo Fisher has suffered and will continue to suffer damages.

89.     On information and belief, Agilent's infringement of the '553 patent is willful, making this an exceptional case and entitling Thermo Fisher to enhanced damages and attorneys' fees.  Agilent knew of its infringement of the '553 patent and its pre-reissue predecessor, the '788 patent, no later than November 9, 2012.

90.     Thermo Fisher has been irreparably harmed by Agilent's infringement of the '553 patent and will continue to be harmed unless Agilent's infringing conduct is restrained and enjoined by order of this Court.

## COUNT SIX
### Agilent's Induced Infringement of the '553 Patent

91.     Thermo Fisher incorporates by reference each of the allegations set forth in paragraphs 1-90 above.

92.     On information and belief, Agilent, without authority, has actively induced and continues to actively induce infringement of one or more claims of the '553 patent under 35 U.S.C. § 271(b) by, among other things, intentionally instructing or otherwise encouraging others to use the Accused Devices within the United States in a manner that infringes one or more claims of the '553 patent.

93.     On information and belief, and, by way of example only and not limitation, Agilent induces infringement of claim 13 of the '553 patent by selling or otherwise distributing

the Accused Devices and publishing materials instructing and encouraging the performance of infringing acts using the Accused Devices.  The Agilent Posters are an example of one such publication.

94.     Claim 13 of the '553 patent is directed to:  "A method for filtering a beam of ions having mass/charge ratios within a range of mass/charge ratios to transmit ions of a selected mass/charge ratio in said range, the method comprising:  emitting the ion beam from a beam source into a first mass filter stage that is arranged in series with a second mass filter stage; selecting at the first mass filter stage for transmission on to the second mass filter stage only ions having a sub-range of mass/charge ratios which includes the selected mass/charge ratio; and selecting at the second mass filter stage only ions having the selected mass/charge ratio, wherein the first and second filter stages operate at pressures below $10^{-3}$ torr."

95.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 13 requirement of "filtering a beam of ions having mass/charge ratios within a range of mass/charge ratios to transmit ions of a selected mass/charge ratio in said range."  See, for example, Agilent's representations set forth in Paragraph 86.  (See, e.g., Ex. F, p. 4.)

96.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 13 requirement of "emitting the ion beam from a beam source into a first mass filter stage that is arranged in series with a second mass filter stage."  See, for example, Agilent's representations set forth in Paragraphs 86 and 87.  (See, e.g., Ex. F, p. 4; Ex. G, p. 7.)

97.     Agilent's prescribed methods of operating the Accused Devices satisfy the claim 13 requirement of "selecting at the first mass filter stage for transmission on to the second mass filter stage only ions having a sub-range of mass/charge ratios which includes the selected

mass/charge ratio."  See, for example, Agilent's representations set forth in Paragraphs 86 and 87.  (See, e.g., Ex. F, p. 4; Ex. G, p. 7.)

98.    Agilent's prescribed methods of operating the Accused Devices satisfy the claim 13 requirement of "selecting at the second mass filter stage only ions having the selected mass/charge ratio."  See, for example, Agilent's representations set forth in Paragraphs 87.  (See, e.g., Ex. G, p. 7.)

99.    Agilent's prescribed methods of operating the Accused Devices satisfy the claim 13 requirement that "the first and second filter stages operate at pressures below $10^{-3}$ torr."  See, for example, Agilent's representations set forth in Paragraph 85.  (See, e.g., Ex. D, p. 9, Table 1.)

100.    As a result of Agilent's induced infringement of the '553 patent, Thermo Fisher has suffered and will continue to suffer damages.

101.    Agilent knew of the '553 patent and its pre-reissue predecessor, the '788 patent, and actively and intentionally induced infringement of the '553 and '788 patents no later than November 9, 2012.

102.    On information and belief, Agilent's induced infringement of the '553 patent is willful, making this an exceptional case and entitling Thermo Fisher to enhanced damages and attorneys' fees.

103.    Thermo Fisher has been irreparably harmed by Agilent's induced infringement of the '553 patent and will continue to be harmed unless Agilent's infringing conduct is restrained and enjoined by order of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Thermo Fisher respectfully requests that this Court:

1.      adjudge that Agilent has directly and by inducement infringed one or more claims of the '386 patent, and that the manufacture, use, sale, offer for sale and/or importation of 8800 and/or 8900 infringe one or more claims of the '386 patent;

2.      adjudge that Agilent has directly and by inducement infringed one or more claims of the '232 patent, and that the manufacture, use, sale, offer for sale and/or importation of 8800 and/or 8900 infringe one or more claims of the '232 patent;

3.      adjudge that Agilent has directly and by inducement infringed one or more claims of the '553 patent, and that the manufacture, use, sale, offer for sale and/or importation of 8800 and/or 8900 infringe one or more claims of the '553 patent;

4.      permanently enjoin Agilent, its officers, agents, servants and employees, and those in active concert or participation with any of them, from infringing the '386, '232 or '553 patents, either directly or by inducement;

5.      award Thermo Fisher compensatory damages for Agilent's infringement of the '386, '232 and '553 patents;

6.      award Thermo Fisher increased damages under 35 U.S.C. § 284 for Agilent's willful and deliberate infringement of the '386, '232 and '553 patents;

7.      declare this to be an exceptional case under 35 U.S.C. § 285;

8.      award Thermo Fisher its attorney fees and costs incurred in prosecuting this action, together with pre-judgment and post-judgment interest; and

9.      grant Thermo Fisher such other and further relief as this Court deems just and proper.

23

## JURY DEMAND

Thermo Fisher hereby respectfully requests a trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.


|  | */s/ Karen E. Keller* |
|---|---|
| | John W. Shaw (No. 3362) |
| OF COUNSEL: | Karen E. Keller (No. 4489) |
| Matthew J. Becker | SHAW KELLER LLP |
| David K. Ludwig | I.M. Pei Building |
| AXINN, VELTROP & HARKRIDER LLP | 1105 North Market Street, 12th Floor |
| 90 State House Square | Wilmington, DE 19801 |
| Hartford, CT 06103 | (302) 298-0700 |
| (860) 275-8177 | jshaw@shawkeller.com |
| | kkeller@shawkeller.com |
| Dated: May 24, 2017 | *Attorneys for Plaintiffs* |