## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THERMO FISHER SCIENTIFIC INC. and THERMO FISHER SCIENTIFIC (BREMEN) GMBH, | ) ) ) |
| | ) C.A. No. 17-600-LPS-CJB |
| Plaintiffs, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) |
| AGILENT TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT AGILENT TECHNOLOGIES, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

OF COUNSEL:

GIBSON DUNN & CRUTCHER LLP
Mark Reiter
Dallas, TX  75201
(214) 698-3100

Brian M. Buroker
Washington, DC  20036-5306
(202) 955-8500

David Glandorf
Denver, CO  80202
(303) 298-5700

Anne Y. Brody
Irvine, CA  92612
(949) 451-3800

Colby A. Davis
Los Angeles, CA  90071
Tel:  (213) 229-7000

Dated:  October 10, 2017
5438389 / 44416

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant*
*Agilent Technologies, Inc.*

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................ 3

III.    LEGAL STANDARD ................................................................................... 4

IV.     ARGUMENT ............................................................................................... 5

        A.      Thermo's Allegations of Direct Infringement Are Insufficient. ........................ 5

                1.      Thermo's Direct Infringement Allegations Fail to Address
                        Numerous Claim Limitations and Also Fail to Relate the
                        Allegations to the Claim Limitations. ........................................... 5

                2.      Thermo Improperly Mixes and Matches Unrelated Passages to
                        "Support" Its Infringement Allegations, While Repeatedly Citing
                        the Same Passages for Multiple Claim Elements Across Multiple
                        Patents. ................................................................................. 9

        B.      Plaintiffs' Allegations of Induced Infringement Are Insufficient. ..................... 11

                1.      Agilent Did Not (and Could Not) Have Had Knowledge of the
                        Asserted '386 and '553 Patents *Before* They Existed. ...................... 12

                2.      Plaintiffs Fail to Allege Facts Showing That Agilent Specifically
                        Intended to Induce Infringement. ................................................ 14

        C.      Plaintiff's Allegations of Willful Infringement Are Insufficient. ..................... 17

                1.      Agilent Did Not (and Could Not) Have Had Knowledge of the
                        Asserted '386 and '553 Patents *Before* They Existed. ...................... 17

                2.      Plaintiffs Fail to Allege Facts Showing That Any Purported
                        Infringement Was Exceptional and Egregious. ................................ 18

V.      CONCLUSION ............................................................................................ 20

**TABLE OF AUTHORITIES**
(con't)

Page(s)

**Cases**

*Adidas Am., Inc. v. Skechers USA, Inc.*,
    No. 16-cv-1400, 2017 WL 2543811 (D. Or. June 12, 2017)..................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................4, 14

*Atlas IP, LLC v. Exelon Corp.*,
    189 F. Supp. 3d 768 (N.D. Ill. 2016) .......................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................4

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)...............................................................................................14

*Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*,
    904 F. Supp. 2d 1260 (M.D. Fla. 2012) .................................................................................12

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)..................................................................................................15

*CG Tech. Dev., LLC v. Big Fish Games, Inc.*,
    No. 16-cv-00857, 2016 WL 4521682 (D. Nev. Aug. 29, 2016)..............................................19

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
    No. 16-cv-801, 2016 WL 6089693 (D. Nev. Oct 18, 2016) .....................................................5

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
    C.A. No. 11-1175, 2012 WL 6968938 (D. Del. Sept. 24, 2014) .........................................4, 8

*Cont'l Circuits LLC v. Intel Corp.*,
    No. 16-cv-2026, 2017 WL 679116 (D. Ariz. Feb. 21, 2017) .................................................18

*Diamond Grading Techs. Inc. v. Am. Gem Soc'y*,
    No. 14-cv-1161, 2016 WL 3902482 (E.D. Tex. Mar. 30, 2016) ............................................13

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006).......................................................................................11, 16

*Emazing Lights, LLC v. De Oca*,
    No. 15-cv-1561, 2016 WL 7507765 (C.D. Cal. June 20, 2016) ............................................18

# TABLE OF AUTHORITIES
(con't)

Page(s)

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)................................................................................................5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)..................................................................................................11, 12, 16

*Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*,
   897 F.2d 508 (Fed. Cir. 1990)...............................................................................................18

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
   136 S.Ct. 1923 (2016).........................................................................................17, 18, 19, 20

*Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*,
   No. 10-cv-260, 2013 WL 5273326 (E.D. Tex. Sept. 18, 2013)..............................................10

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
   C.A. No. 16-134, 2017 WL 1312942 (D. Del. Apr. 5, 2017).................................................16

*Jenkins v. LogicMark LLC*,
   No. 16-cv-751, 2017 WL 376154 (E.D. Va. Jan 25, 2017).....................................................8

*L&W, Inc. v. Shertech, Inc.*,
   471 F.3d 1311 (Fed. Cir. 2006).............................................................................................11

*Mallinckrodt, Inc. v. E-Z-Em Inc.*,
   670 F. Supp. 2d 349 (D. Del. 2009)......................................................................................12

*Martin v. Cordrey*,
   C.A. No. 16-600, 2017 WL 3866053 (D. Del. Sept. 5, 2017)................................................15

*MONEC Holding v. Motorola Mobility, Inc.*,
   897 F. Supp. 2d 225 (D. Del. 2012).................................................................11, 13, 16, 17

*Morse v. Lower Merion Sch. Dist.*,
   132 F.3d 902 (3d Cir. 1997)..........................................................................................13, 19

*Neology Inc. v. Kapsch Trafficcom IVHS, Inc.*,
   C.A. No. 13-2052, 2014 WL 4675316 (D. Del. Sept. 19, 2014)............................................16

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993)..........................................................................................14, 15

*Raindance Technologies, Inc. v. 10x Genomics, Inc.*,
   C.A. No. 15-152, 2016 WL 927143 (D. Del. Mar. 4, 2016)................................................5, 8

## TABLE OF AUTHORITIES
(con't)

<u>Page(s)</u>

*Scripps Research Inst. v. Illumina, Inc.*,
    No. 16-cv-661, 2016 WL 6834024 (S.D. Cal. Nov. 21, 2016)............................................8, 11

*Sentius International, LLC v. Microsoft Corp.*,
    78 F. Supp. 3d 967 (N.D. Cal. 2015) ...................................................................................13

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985)............................................................................................18

*Varian Med. Sys., Inc. v. Elekta AB*,
    C.A. No. 15-871, 2016 WL 3748772 (D. Del. July 12, 2016)..........................................18, 19

*Videx, Inc. v. TriTeq Lock and Sec., LLC*,
    No. 11-cv-6384, 2014 WL 2040745 (D. Or. May 8, 2014)......................................................8

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016)............................................................................................17

*Xpoint Techs., Inc. v. Microsoft Corp.*,
    730 F. Supp. 2d 349 (D. Del. 2010)...........................................................................12, 13, 19

*Yama Capital LLC v. Canon Inc.*,
    No. 12-cv-7159, 2013 WL 6588589 (S.D.N.Y. Dec. 13, 2013) ............................................10

*Zimmer Surgical, Inc. v. Stryker Corporation.*
    C.A. No. 16-679, 2017 WL 1296026 (D. Del. April 6, 2017).................................................13

*Zimmer Surgical, Inc. v. Stryker Corporation*,
    C.A. No. 16-679, 2017 WL 3736750 (D. Del. Aug. 30, 2017) ..............................................13

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................................................................4

## I.      INTRODUCTION

Thermo Fisher Scientific Inc. and Themo Fisher Scientific (Bremen) GMBH (together, "Thermo") allege that Agilent Technologies, Inc. ("Agilent") infringes three patents: U.S. Patent Nos. RE45,386 (the "'386 patent"), 7,230,232 (the "'232 patent"), and RE45,553 (the "'553 patent") (collectively, the "Asserted Patents").  Thermo also alleges that Agilent began marketing the accused technology in 2012, and, also in 2012, that Thermo contacted Agilent about its alleged infringement.   Despite Thermo's admitted knowledge of Agilent's technology and the correspondence in 2012, it took Thermo five years to file the present Complaint.  Even with all that time, the Complaint fails to state a plausible claim upon which relief can be granted.

Indeed, since the abrogation of Form 18 in December 2015, it is now clear that a "plausible" claim for patent infringement must plead more than conclusory statements.  In particular, for each accused product, the patentee must allege: (a) that the product satisfies every limitation of the patent claim; and (b) facts demonstrating how that product allegedly meets each limitation.  Thermo's Complaint, however, fails in both regards.

For direct infringement, Thermo repeatedly points to the same few decontextualized, cryptic references from a 2012 Agilent presentation to support its allegations that different Agilent systems practice numerous structural claim limitations from multiple patents.  When it departs from that one 2012 presentation, Thermo relies on an out-of-context statement from a different 2012 presentation and a statement from a third, standalone brochure, dated 2015.  Thermo, likewise, relies on these same statements purportedly describing structural features of the equipment to assert that Agilent actively induces its customers to *operate* the equipment in a manner that infringes method claims appearing in the asserted patents.  But the cobbling together of these various papers fails to state a claim that the accused products, or operation of those

products, satisfies the many different claim limitations across multiple patents (and patent families), particularly given the absence of numerous elements of the claims within these statements and the absence of any explanation of how any one of these statements relates to any one claim limitation.

In addition to alleging direct infringement, Thermo also alleges that Agilent actively induces its customers to infringe certain of the method claims of the asserted patents. In doing so, however, Thermo ignores that an essential element of induced infringement includes pre-suit knowledge of the asserted patent. For two of the asserted patents—the reissue patents—Thermo fails to cite to any facts that support pre-suit knowledge of the *asserted* patents. Instead, Thermo refers to the "pre-reissue predecessor" patents, which were the subject of correspondence in 2012, but overlooks that the asserted reissue patents issued several years later, in 2015, and Thermo failed even to notify Agilent that it had filed reissue applications, much less that new patents had issued. And for all the patents, including the '232 patent which was not reissued, Thermo fails to identify any facts supporting Agilent's intent to infringe; this failure is particularly problematic given Thermo's multi-year silence after originally writing to Agilent, and even years after the patents were reissued. The Complaint must be dismissed because it fails to plausibly allege that Agilent had the requisite knowledge or specific intent to induce infringement.

The allegations of willful infringement are equally deficient. As explained, Thermo fails to allege any facts that support its allegation that Agilent had knowledge of the reissue '386 and '553 patents. Nor does Thermo identify any facts that explain its delay in asserting the '232 patent after years of silence, and how, given that silence, Agilent could be said to have acted egregiously and willfully. At bottom, Thermo's willful infringement allegations are quintessentially rote, conclusory, and insufficient.

Because each of Thermo's claims fails the Supreme Court's test for plausibility, Agilent respectfully requests that the Court grant its Motion to Dismiss for failure to state a claim.

## II.      STATEMENT OF FACTS

Agilent is a global leader in life sciences, diagnostics, and applied chemical markets, and offers instruments, software, services, and consumables for the entire laboratory workflow. Mass spectrometers are one of the many types of products that Agilent develops and sells. For nearly one-hundred years, scientists have used mass spectrometers to, among other things, analyze the composition of chemical compounds. At a very high level, mass spectrometers work by converting chemicals in a sample into ions. The ionized (charged) constituents are then analyzed to determine the composition of the sample. In this case, Thermo accuses two of Agilent's mass spectrometers, the Agilent 8800 and the Agilent 8900 (the "Accused Products"), of infringement.

Thermo alleges that Agilent began selling the Agilent 8800 instrument in 2012. Compl. at ¶ 16. Thermo further alleges that in November 2012, it sent a letter to Agilent identifying three patents: the presently asserted '232 patent and the two patents from which the asserted reissue '386 and '553 patents are derived. *Id.* at ¶ 21. The Complaint alleges that the parties exchanged correspondence into April 2013. *Id.* at ¶¶ 22-24. Thermo did not provide copies of the correspondence as exhibits to the Complaint.

Also, according to the Complaint, in September 2013, Thermo filed reissue applications on two of the patents identified in the correspondence and, during those proceedings, "submitted in an information disclosure statement ('IDS') each of the references cited by Agilent in its letters." *Id. at* ¶¶ 25-26. The Complaint does not allege that Thermo provided Agilent with notice of the reissue applications or notice that the reissue patents issued. In fact, over two years passed from

issuance of the reissue '386 patent and two years from issuance of the reissue '553 patent before

Thermo notified Agilent of these patents—through the filing of its Complaint.

## III.   LEGAL STANDARD

All pleadings must set forth a statement showing "that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Likewise,

"unadorned" "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do,'" nor will "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*.

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).  Such conclusory allegations

"are not entitled to the presumption of truth."  *Id*. at 678–79.  Rule 8 "does not unlock the doors of

[litigation] for a plaintiff armed with nothing more than conclusions."  *Id*.   Rather, all legal

conclusions "must be supported by factual allegations."  *Id*.

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege non-

conclusory facts that make liability "plausible," meaning that they "allow[] the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570, 556 (2007)); *see also, Chalumeau Power Sys. LLC v.

Alcatel-Lucent*, C.A. No. 11-1175, 2012 WL 6968938, at *2 (D. Del. Sept. 24, 2014) ("[T]here

must be facts alleged that 'are sufficient to show that the plaintiff has a plausible claim for

relief.'").  "Where a complaint pleads facts that are merely consistent with a defendant's liability,

it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556

U.S. at 678 (quotations omitted).

## IV.     ARGUMENT

Thermo's Complaint fails to meet the minimum pleading standards for direct infringement. Thermo also fails to identify any facts that "plausibly" demonstrate that Agilent had the necessary knowledge or *mens rea* to actively induce infringement or to willfully infringe.

### A.     Thermo's Allegations of Direct Infringement Are Insufficient.

Counts One, Three and Five of the Complaint allege direct infringement of, respectively, the '386 patent, the '232 patent, and the '553 patent.   But rather than compare the structural components of the Accused Products to the structural limitations of the claims, Thermo merely repeatedly quotes, *without explanation*, select passages from unrelated papers, each of which concern only one of the Accused Products.   This does not constitute a plausible allegation of patent infringement.   *See Raindance Technologies, Inc. v. 10x Genomics, Inc.*, C.A. No. 15-152, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (dismissing the complaint where the plaintiff made "no attempt to relate any [of its] factual assertions with any of the asserted claims").

### 1.     Thermo's Direct Infringement Allegations Fail to Address Numerous Claim Limitations and Also Fail to Relate the Allegations to the Claim Limitations.

It is a canon of patent law that a patent is infringed only if a system or process meets every limitation of at least one claim of the patent—*i.e.*, only if the accused instrumentality performs all the steps or contains all the features recited in the claim.   *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1215 (Fed. Cir. 2014) ("To prove literal infringement, the patentee must show that the accused device contains *each and every* limitation of the asserted claims." (emphasis in original)).   As a result, a plausible allegation of patent infringement must be based on a plausible allegation that *every* element of a claim in the patent is satisfied by an accused instrumentality. *See CG Tech. Dev., LLC v. FanDuel, Inc.*, No. 16-cv-801, 2016 WL 6089693, at *3 (D. Nev. Oct 18, 2016); *see Atlas IP v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016) ("[F]actual

allegations that do not permit a court to infer that the accused product infringes each element of at least one claim are not suggestive of infringement.").  As explained below, Thermo fails to provide factual support for *multiple* claim elements of each of the Asserted Patents, and therefore, its allegations of direct infringement should be dismissed.

Count One of Thermo's Complaint alleges direct infringement of the '386 patent.  This Count, however, fails to address essential claim elements and therefore must be rejected.  For instance, Paragraph 31 references a claim limitation that requires the claimed "mass spectrometer" to itself "generate . . . artefact ions."  But the quotation provided says nothing about the generation of "artefact ions," whether by the accused Agilent 8800 or otherwise; nor does Thermo provide any explanation of how the quoted passage plausibly demonstrates that claim element.  Likewise, Paragraph 34 of Count One refers to a claim limitation requiring a "mass analyzer" that "is configured to detect the first atomic ions when the same mass-to-charge ratio is the first mass-to-charge ratio."  The factual support for this limitation—again without explanation—is merely a "[s]ee, e.g., id." to Paragraph 33.

Count Three alleges direct infringement for the '232 patent, but it too fails to address all claim limitations.  For example, Paragraph 58 "covers" a claim limitation that requires "an ion optical device configured . . . to reduce gas loading . . . on the collision cell."  As with Count One, the Complaint merely provides, without explanation, a "[s]ee, e.g., id." back to Paragraph 31 (from Count One and a different patent) for factual support that the Accused Products include this limitation.  That passage, however, does not mention or suggest a device that is configured to reduce gas loading.  Similarly, the claim limitation addressed in Paragraph 59 requires "a mass-to-charge ratio analyzer disposed within an analyzing chamber . . . to produce a mass spectrum."  Rather than provide independent support and explanation that plausibly demonstrates

infringement, Paragraph 59 only provides—without explanation again—a reference to Paragraph 33. But the passage quoted in Paragraph 33 does not mention or suggest the presence of an "analyzing chamber" in the Accused Products or the production of a "mass spectrum." Paragraph 60 fares no better; it alleges that the Accused Products include "a first portion in which ions are transmitted along an axis and a second portion in which the ion beam is deflected off the axis upstream of the mass-to-charge analyzer." Here—in contrast with the previous two—Thermo at least provides an independent quotation to attempt show this limitation, but as with all its allegations it fails to relate the quotation to the claim element and, by that failure, omits any showing that the Accused Products "*deflect* [the ion beam] off the axis." Compl. at ¶ 60, emphasis added. Mere use of "off-axis extraction lenses" does not suggest that some "deflect[or]" is also present, as the '232 patent requires.

Finally, Count Five, which pertains to the '553 patent, also fails to provide any plausible claim of direct infringement. The Complaint provides no support for the claim elements addressed by Paragraphs 86 and 87, which require the "sub-range of mass/charge ratios" from "the first mass filter stage" to "includ[e] the selected mass/charge ratio." And nothing in the quotations cited by Thermo explains how or shows that the second quadrupole of the Agilent 8800 "includes" a selected mass/charge ratio within the "sub-range" passed through the first scanning quadrupole. For example, the Agilent 8800's second quadrupole is routinely set to select ions with mass-to-charge ratios outside of the "sub-range" of the first scanning quadrupole based on the unique needs of any given experiment. Thus, the limitations in paragraphs 86 and 87 lack essential factual support.

Count Five is also inadequate because Thermo mixes and matches descriptions of the Accused Product that are *mutually exclusive.* Paragraph 86, for instance, cites to the Agilent

8800's *single-quad mode* for one claim limitation, and Paragraph 87 points to the Agilent 8800's *MS/MS mode* for another limitation of the same claim. Yet Thermo does not (and cannot) allege that these two separate—and mutually exclusive—modes could operate simultaneously such that all of the claim elements would be present in a single apparatus. Indeed, at least when operated in *MS/MS mode*—quoted in Paragraph 87—it is plain that the first quadrupole in the Agilent 8800 *is not* "configured to select . . . a sub-range of mass/charge ratios"—as required by the claim limitation in Paragraph 86. Thus, either the limitation in Paragraph 87 or the limitation in Paragraph 86, or both, lack factual support suggesting infringement.

Indeed, even if there were some way to read the cited passages as supporting every claim element (and there is not), numerous cases make clear that a plaintiff cannot satisfy the pleading standards merely by proffering quotes and citations, devoid of any explanation as to *how* the quoted material demonstrates infringement of the accused products. *See, e.g., Raindance Techs.*, 2016 WL 927143, at *2 (dismissing "thirty-five pag[e]" complaint because the plaintiff made "no attempt to relate any [of its] factual assertions with any of the asserted claims," and "[i]t does not appear from Plaintiff's reliance on promotional materials that it has purchased one of Defendant's products to see how it actually works"); *Chalumeau*, 2012 WL 6968938, at *1 (dismissing complaint because while there "are factual assertions," "[t]he connection[s] . . . are not explained sufficiently"). A complaint must actually "explain *how*" each feature of the accused product "plausibly meets the limitations" of the asserted claim. *Scripps Research Inst. v. Illumina, Inc.*, No. 16-cv-661, 2016 WL 6834024, at *6 (S.D. Cal. Nov. 21, 2016) (emphasis added). And naked citations to promotional materials are insufficient. *Id.*; *see also Videx, Inc. v. TriTeq Lock and Sec., LLC*, No. 11-cv-6384, 2014 WL 2040745, *4–5 (D. Or. May 8, 2014); *Jenkins v. LogicMark*

*LLC*, No. 16-cv-751, 2017 WL 376154, at *3 (E.D. Va. Jan 25, 2017) ("Without more, LogicMark is unable to defend itself properly . . . .").

> **2.      Thermo Improperly Mixes and Matches Unrelated Passages to "Support" Its Infringement Allegations, While Repeatedly Citing the Same Passages for Multiple Claim Elements Across Multiple Patents.**

Thermo exacerbates the substantive omissions caused by reliance on these few quotations, as well as its failure to relate any of these quotations to the claim limitations, by re-citing a select few passages time and again for limitation after limitation, often across patents (from different patent families).  For example, paragraph 32 of Count One, which purportedly addresses a limitation different from the limitation addressed in paragraph 31, merely quotes the claim limitation and cites back to paragraph 31.  Likewise, paragraph 34 of Count One, which purportedly addresses a limitation different from the limitation addressed in paragraph 33, again merely quotes the claim limitation and cites back to paragraph 33.  Similarly, in Count Three, which alleges direct infringement of claim 11 of the '232 patent, Thermo quotes the limitations of claim 11 and then simply cites back to paragraphs from Count One that allege infringement of the '386 patent:

- Count Three, paragraph 55 cites to Count One, paragraph 30;
- Count Three, paragraph 56 cites to Count One, paragraph 31;
- Count Three, paragraph 57 cites to Count One, paragraph 31; and
- Count Three, paragraph 59 cites to Count One, paragraph 33.

The same is true for Count Five, which alleges direct infringement of claim 1 of the '553 patent; for several limitations, Count Five simply cites back to paragraphs in Count One.  *See, e.g.*, Count Five, paragraph 83, which cites to Count One, paragraph 30; and Count Five, paragraph 84, which cites to Count One, paragraph 33.  Ultimately, one quote, provided initially in paragraph 31, is employed eight times, while another, provided initially in paragraph 33, is employed nine times. Thermo's repeated, rote citation to the same passages—devoid of explanation of how the

9

passages relate to a particular limitation—is insufficient to yield a plausible claim of patent infringement.

In addition to improperly mixing-and-matching mutually exclusive operational modes of the Accused Products, and improperly mixing-and-matching a handful of quotations across numerous claim limitations from multiple patents (from different patent families) without explanation, Thermo mixes-and-matches its purported factual support from three distinct, unrelated scientific experiments. Specifically, the experiments described in the three publications that Thermo cites (the Complaint's Exhibits D, F, and G) include those that were carried out at different times, by different scientists, and (where indicated) in Japan. For example, the quotation appearing in repeatedly-cited paragraph 33 identifies a "proposed configuration" for the particular experiment described in that part of the paper; nowhere, however, is that "proposed configuration" identified as universal configuration or one that might apply outside the context of that particular experiment. Yet Thermo ignores this unique configuration, mixing-and-matching it with passages from a variety of unrelated experiments and thereby leaving a substantial void regarding what exactly it accuses of infringement. Thermo cannot stitch together a plausible claim for direct infringement by pulling from whichever of these three wholly unrelated experiments suits its purpose for each of the claim elements. *See Yama Capital LLC v. Canon Inc.*, No. 12-cv-7159, 2013 WL 6588589, at *4 (S.D.N.Y. Dec. 13, 2013)("Plaintiff cannot find infringement in isolated claim limitations, taken out of context, that are unrelated to other limitations that together (and only together) constitute the claimed method."); *Hitachi Consumer Elecs. Co. v. Top Victory Elecs. (Taiwan) Co.*, No. 10-cv-260, 2013 WL 5273326, at *3 (E.D. Tex. Sept. 18, 2013)(rejecting arguments that "mixed and matched different chipset datasheets and standard documents to address different elements of the same asserted claim").

Finally, Thermo does not allege a plausible claim of patent infringement relating to the Agilent 8900 merely by asserting, in the most conclusory fashion, that "[t]he 8800 and 8900 are structurally and operationally similar." *See L&W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1316–18 (Fed. Cir. 2006)(rejecting claims that "assume[d], without support, that [the] accused products [we]re structurally similar" to the one product that was examined in detail). Indeed, the pages in Exhibit E that are cited as support for this proposition are merely a high-level structural overview of the Agilent 8900, which does not provide details on the operational characteristics of the machine at all. The allegations focusing on the Agilent 8900 must be dismissed, because as with the allegations against the Agilent 8800 addressed above, the Complaint does not actually compare each of the limitations in any patent claim to the components of the actual apparatus and "explain how" the limitations are met. *Scripps*, 2016 WL 6834024, at *6; *L&W*, 471 F.3d at 1316–18.

In sum, each of Counts One, Three, and Five should be dismissed.

**B.     Plaintiffs' Allegations of Induced Infringement Are Insufficient.**

Thermo also fails to present plausible claims of induced infringement, which, in addition to requiring a plausible claim of direct infringement, "requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (internal quotes omitted). This "necessarily includes the requirement that [the defendant] knew of the patent." *Id.* at 1304. "However, knowledge of infringement is not enough." *MONEC Holding v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 231 (D. Del. 2012). The defendant must also have "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Additionally, inducement requires proof of specific intent to cause patent infringement, *i.e.*, "culpable conduct, directed [intentionally] to encouraging another's infringement." *DSU*, 471 F.3d at 1306.

### 1.   Agilent Did Not (and Could Not) Have Had Knowledge of the Asserted '386 and '553 Patents *Before* They Existed.

For at least the reissue patents, the '386 and '553 patents, Thermo fails plausibly to allege even the first element.  As Courts in this District have recognized, the "requisite knowledge can[not] be established by the filing of the Plaintiffs' Complaint."  *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 354, n.1 (D. Del. 2009).  Instead, a claim for indirect infringement must include a factual basis showing "that Defendants had knowledge of the [asserted] Patent at the time they were committing the allegedly infringing activities."  *Id.*; *see also Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010) ("[K]nowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement.").  In other words, a complaint cannot provide notice because to do so "would vitiate the Supreme Court's holding in *Global-Tech* that an allegation of knowledge of the patent is required to state a claim for induced infringement."  *Brandywine Commc'ns Techs., LLC v. T-Mobile USA, Inc.*, 904 F. Supp. 2d 1260, 1268–69 (M.D. Fla. 2012).

Perhaps recognizing that it cannot rely on the Complaint for notice, Thermo provides two cryptic, nonsensical and insufficient allegations:

- Agilent knew of the '386 patent and its pre-reissue predecessor, the '470 patent, and actively and intentionally induced infringement of the '386 and '470 patents no later than November 9, 2012.  Compl. at ¶ 49.

- Agilent knew of the '553 patent and its pre-reissue predecessor, the '788 patent, and actively and intentionally induced infringement of the '553 and '788 patents no later than November 9, 2012.  Compl. at ¶ 101.

On their face, these allegations make no sense; as the Complaint admits, the '386 patent did not issue until February 24, 2015, and the '553 patent did not issue until June 9, 2015.  *See* Compl. at ¶¶ 9, 12.  That Thermo would allege that notice of a patent exists three years prior to its issuance underscores its desperation to find some fact, even if implausible, by which to satisfy this

requirement.   But that is not how it works: "[A] mere recitation of the elements for indirect infringement . . . is insufficient." *Xpoint*, 730 F. Supp. 2d at 357; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (rejecting "bald assertions" and "legal conclusions").

Indeed, Courts in this District, and many others, have rejected Thermo's theory that knowledge of a pre-reissue predecessor patent equates to knowledge of a reissue patent.  *See Zimmer Surgical, Inc. v. Stryker Corporation*.  No. 16-cv-679, 2017 WL 1296026, at *5–6 (D. Del. April 6, 2017) (report and recommendation), adopted in part and denied in part on other grounds, C.A. No. 16-679, 2017 WL 3736750, at *2 (D. Del. Aug. 30, 2017) (holding knowledge of the predecessor "[p]atent is insufficient to infer the requisite knowledge of the . . . Reissue Patent."); *accord Diamond Grading Techs. Inc. v. Am. Gem Soc'y*, No. 14-cv-1161, 2016 WL 3902482, at *2 (E.D. Tex. Mar. 30, 2016) ("The existence of the [reissue] Patent and the scope of the [reissue] Patent's claims are not facts that can be ascertained merely from notice of the original '673 Patent."); *Sentius International, LLC v. Microsoft Corp.*, 78 F. Supp. 3d 967, 975–76 (N.D. Cal. 2015) (holding that "knowledge of the [earlier] patent" is insufficient to infer knowledge of the reissue patent, and "the [reissue] patents would have had to have existed at the time that [the parties] engaged in pre-suit contact").  In short, "it is well-established that mere knowledge of one patent in a patent family . . . does not establish actual knowledge of a different patent in that family." *MONEC*, 897 F. Supp. 2d at 229.  Nor is there any "authority for imposing a duty on Defendants to indefinitely track a particular patent in anticipation of a potential infringement lawsuit." *Id.* at 233.

Because the Complaint contains *no* factual basis to support the allegation that Agilent had pre-suit knowledge of the '386 and '553 patents, the motion to dismiss must be granted as to induced infringement of those patents.

### 2. Plaintiffs Fail to Allege Facts Showing That Agilent Specifically Intended to Induce Infringement.

In addition, with respect to all the Asserted Patents, Thermo fails to allege facts that plausibly show that Agilent specifically intended to induce infringement. Instead, Thermo merely recites, in the most threadbare fashion, that Agilent "actively and intentionally induced infringement . . . ." Compl. at ¶¶ 49, 76, 101. But the bare allegation that Agilent had purported notice of Thermo's five year-old infringement allegations, is insufficient. Pleading "facts that are merely consistent with" liability "stops short" of showing an entitlement to relief. *Iqbal*, 556 U.S. at 678. To survive dismissal, Plaintiffs must also plead "facts plausibly showing that [Agilent] specifically intended its customers to infringe the [the '232 patent] and knew that the customer's acts constituted infringement." *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

Here, Thermo does not even allege—*plausibly or otherwise*—that Agilent believed there was a high probability that its products infringe and/or could be used to infringe any of Thermo's patents, much less that Agilent had actual subjective knowledge of third-party infringement or the specific intent to cause such infringement. The Complaint explicitly identifies and bases its allegations of indirect (and willful) infringement upon four letters that were exchanged between the parties but does so without actually attaching the correspondence. *See* Compl. at ¶¶ 21–24. Thermo likely omitted the details of the correspondence because those details do not provide the plausible support Thermo needs. For completeness, Agilent does so now, and it is entirely appropriate for the Court to consider these documents when deciding this motion to dismiss because Thermo bases its claims on these documents:[1]

---

[1] "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993).

- Thermo's November 9, 2012, letter asserting infringement, but providing no claim chart, no limitation-by-limitation analysis, nor any explanation of how Agilent allegedly infringes.  *See* Compl. at ¶ 21 and Exhibit A hereto.

- Agilent's January 18, 2013, letter responding that Thermo's letter fails to explain how each claim element is satisfied, provides no indication of how the "marked up drawings and text excerpts" correspond to individual claim elements, and how Thermo thereby obscures the claim interpretation behind its infringement contentions, all of which make "it difficult for [Agilent] to fully assess [Thermo's] position."  The letter also identifies several anticipatory prior art references.  *See* Compl. at ¶ 22 and Exhibit B hereto.

- Thermo's March 29, 2013, letter, in which Thermo refuses to provide any additional information explaining how Agilent allegedly infringes, "assume[s]" Agilent has no non-infringement defenses, and challenges Agilent's invalidity explanation. *See* Compl. at ¶ 23 and Exhibit C hereto.

- Agilent's April 26, 2013 letter reiterating Thermo's failure to provide "any specific contentions supporting its [infringement] assertion" and providing a claim chart demonstrating invalidity.  Far from Thermo's allegation in paragraph 24 of the Complaint that Agilent refused to negotiate a license, the letter concludes with a request that Thermo sign a non-disclosure agreement so that the parties can have an "open exchange of contentions to move any [] discussions forward."  *See* Compl. at ¶ 24 and Exhibit D hereto.

Thermo never responded to Agilent's April 26 letter, not with further infringement contentions, not with a response to the invalidity claim chart, nor with a response to Agilent's invitation for further discussions.  Instead, Thermo waited over *four years* to file the present Complaint.  Given the absence of a response, Thermo cannot plausibly explain how Agilent might

---

"Otherwise, a plaintiff . . . could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Id.*  A document forms the basis of a claim if it is "integral or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "[T]he primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Id.* (internal quotations omitted); *see also Pension Ben.*, 998 F.2d at 1196–97 ("When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished."); *Martin v. Cordrey*, C.A. No. 16-600, 2017 WL 3866053, at *2 (D. Del. Sept. 5, 2017)("The main concern with such documents is notice to the plaintiff, but this is not an issue when the plaintiff has relied upon the document in drafting the complaint.").

have subjectively believed it infringed.  Thermo's indirect infringement claims fail as a matter of law.  *Global-Tech*, 563 U.S. at 766.

Even putting all of this aside, Thermo also fails adequately to allege any specific intent or "culpable conduct, directed to encouraging another's infringement."  *DSU*, 471 F.3d at 1306. Instead, Thermo merely pleads that Agilent was "intentionally instructing or otherwise encouraging others to use the Accused Devices . . . in a matter that infringes."  Compl. at ¶¶ 39, 65, 92.  But the law in this District is clear that "conduct in selling, advertising, supplying and instructing . . . customers on the use of the infringing product" does not support a claim for inducement.  *MONEC*, 897 F. Supp. 2d at 234.  Such "[a]llegations of the marketing activities of [Agilent] do not, on their own, demonstrate that [it] knew such activities were infringing or that [it] possessed the specific intent to encourage another's infringement."  *Id.*; *see also IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*, C.A. No. 16-134, 2017 WL 1312942, at *4 (D. Del. Apr. 5, 2017) (rejecting as insufficient "links to [the defendant's] website and specific webpages that [the plaintiff] claims 'instructs and encourages users,'" "providing 'detailed support for'" the alleged infringement); *Neology Inc. v. Kapsch Trafficcom IVHS, Inc.*, C.A. No. 13-2052, 2014 WL 4675316 (D. Del. Sept. 19, 2014), at *6 (D. Del. Sept. 19, 2014) (recognizing that "assertions that a defendant provided unspecified training and instructions to its customers concerning the use of the Accused Products are not specific enough . . . and simply begs the question: Provided training and instructions as to what?" (internal quotations omitted)).  Plaintiffs' allegations of unspecified "instructi[on]" and "encourage[ment]" are, thus, clearly inadequate.

In short, Counts Two, Four, and Six fail to state a claim because they simply "plead[] the requirements for indirect infringement without reference to any facts which demonstrate how the

requirements are satisfied in this instance." *MONEC*, 897 F. Supp. 2d at 235.  Dismissal is therefore warranted.

### C. Plaintiff's Allegations of Willful Infringement Are Insufficient.

Counts One, Two, Five, and Six must be dismissed as regards willful infringement because Thermo cannot plausibly allege that Agilent had knowledge of the Asserted '386 and '553 Patents before those patents even existed.  Moreover, the *entirety* of Thermo's allegations of willful infringement fail by attempting to substitute a rote, formulaic recitation of the legal test for willful infringement rather than providing a factual explanation of how the alleged infringement was exceptional and egregious.

#### 1. Agilent Did Not (and Could Not) Have Had Knowledge of the Asserted '386 and '553 Patents *Before* They Existed.

Even if there were a valid allegation of direct or indirect infringement in the Complaint (and there is not), Thermo's claims for willful infringement are still insufficient and subject to dismissal.  Willful infringement may be found "only in egregious cases." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923, 1932 (2016).  "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* "[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct," including its subjective beliefs on validity and infringement. *Id.* at 1933. Moreover, "[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

As explained, Thermo provides *no* factual basis to support its allegation that Agilent had pre-suit knowledge of the '386 and '553 patents; these patents did not even exist until several years

after the alleged November 2012 communications between the Parties. *See Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990) ("It is obvious that a party cannot be held liable . . . for 'willful' infringement, of a nonexistent patent."); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it.").

Because there is no factually supported allegation that Agilent had pre-suit knowledge of the '386 and '553 patents, Thermo's "pre-suit and post-suit willful infringement claim[s are] subject to dismissal." *Varian Med. Sys., Inc. v. Elekta AB*, C.A. No. 15-871, 2016 WL 3748772, at *8 (D. Del. July 12, 2016); *see also Adidas Am., Inc. v. Skechers USA, Inc.*, No. 16-cv-1400, 2017 WL 2543811, at *4 (D. Or. June 12, 2017)("If the defendant does not learn of the patent's existence until the plaintiff files a complaint for infringement, there is no basis upon which the plaintiff can plead that the defendant's infringement was willful.").

### 2. Plaintiffs Fail to Allege Facts Showing That Any Purported Infringement Was Exceptional and Egregious.

Under *Halo*, knowledge of the asserted patent is a *necessary* condition for willfulness, but not a sufficient one. *See* 136 S.Ct. at 1936 (Breyer, J., concurring); *Varian Med. Sys.*, 2016 WL 3748772, at *8; *Emazing Lights, LLC v. De Oca*, No. 15-cv-1561, 2016 WL 7507765, at *2 (C.D. Cal. June 20, 2016) (dismissing willful infringement claim though plaintiff "provided written notice to each of Defendants of their infringing actions and has demanded that Defendants cease and desist from their wrongful activities."); *Cont'l Circuits LLC v. Intel Corp.*, No. 16-cv-2026, 2017 WL 679116, at *11 (D. Ariz. Feb. 21, 2017)("Plaintiff has alleged sufficient facts to show knowledge, but not to show the additional element of egregiousness."). Even if knowledge is established, a complaint must "articulate how the [alleged conduct] actually amounted to an egregious case of infringement of the patent." *Varian Med. Sys.*, 2016 WL 3748772, at *8; *see*

*also CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 16-cv-00857, 2016 WL 4521682, at *14

(D. Nev. Aug. 29, 2016) (granting motion to dismiss where plaintiffs "fail[ed] to allege any facts

suggesting that Defendant's conduct is 'egregious . . . beyond typical infringement'").

Fatally for all of Thermo's allegations of willful infringement, including under the '232

Patent, the Complaint fails to articulate how Agilent's alleged conduct, particularly in light of

Thermo's near five-year silence, and the true substance of the parties' correspondence, is actually

egregious or atypical compared to other claims of patent infringement. Instead, Thermo provides

only the bald legal conclusion, "[o]n information and belief," that Agilent's "infringement . . . is

willful," sometimes baselessly adding that "Agilent knew of its infringement." Compl. at ¶¶ 36,

50, 62, 77, 89, 102. However, the law is clear that a complaint that "does little more than provide

a formulaic recitation of the . . . elements of a willful infringement claim" is subject to dismissal.

*Varian Med. Sys.*, 2016 WL 3748772, at *8; *see also Xpoint*, 730 F. Supp. 2d at 357 ("[A] mere

recitation of the elements . . . is insufficient."); *Morse*, 132 F.3d at 906 (rejecting "bald assertions"

and "legal conclusions"). At best, Thermo musters only a rote, conclusory allegation of willful

infringement because it is simply not true that Agilent's conduct was egregious, "malicious, [or]

bad faith," as required for willful infringement. *Halo*, 136 S.Ct. at 1932.

Rather than provide a plausible claim of willful infringement, Thermo's Complaint does

just the opposite: It shows that Thermo fell silent for over four years, including two years

*subsequent to reissuance* of its patents. It shows that at no time in that multi-year silence did

Thermo notify Agilent of its activities and intentions, nor that it was even still considering

infringement allegations. Thus, no basis exists to deem any purported conduct by Agilent

egregious or bad faith, when it not only reasonably believed that the patents were invalid and its

products non-infringing, but moreover it reasonably believed—and was *intentionally led to*

*believe*—that Thermo agreed or at least was no longer pursuing infringement allegations.  On the other hand, Thermo's conduct in intentionally leading Agilent to believe the dispute was resolved, all the while sharpening its axe in reissue proceedings, could itself be interpreted as atypical, egregious, "or—indeed—characteristic of a pirate."  *Id.*  Thermo's allegations of willful infringement must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Complaint fails the Supreme Court's test under *Twombly* and *Iqbal*, and the Motion to Dismiss for Failure to State a Claim should be granted.

OF COUNSEL:

Mark Reiter
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX  75201
Tel:  (214) 698-3100

Brian M. Buroker
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC  20036-5306
Tel:  (202) 955-8500

David Glandorf
GIBSON DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202
Tel:  (303) 298-5700

Anne Y. Brody
GIBSON DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612
Tel:  (949) 451-3800

Colby A. Davis
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Tel:  (213) 229-7000

Dated:  October 10, 2017

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ Stephanie E. O'Byrne*
　　　 David E. Moore (#3983)
　　　 Bindu A. Palapura (#5370)
　　　 Stephanie E. O'Byrne (#4446)
　　　 Hercules Plaza, 6th Floor
　　　 1313 N. Market Street
　　　 Wilmington, DE  19801
　　　 Tel:  (302) 984-6000
　　　 dmoore@potteranderson.com
　　　 bpalapura@potteranderson.com
　　　 sobyrne@potteranderson.com

*Attorneys for Defendant Agilent Technologies, Inc.*