**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THERMO FISHER SCIENTIFIC INC. and THERMO FISHER SCIENTIFIC (BREMEN) GMBH,<br><br>        Plaintiffs,<br><br>   v.<br><br>AGILENT TECHNOLOGIES, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>) C.A. No. 17-600-LPS-CJB<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT AGILENT TECHNOLOGIES, INC.'S REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

OF COUNSEL:

Mark Reiter
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX 75201
Tel: (214) 698-3100

Brian M. Buroker
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036-5306
Tel: (202) 955-8500

David Glandorf
GIBSON DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO 80202
Tel: (303) 298-5700

Anne Y. Brody
GIBSON DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
Tel: (949) 451-3800

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant
Agilent Technologies, Inc.*

OF COUNSEL:

Colby A. Davis
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 229-7000

Dated: October 31, 2017
5509200 / 44416

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Thermo's Opposition Suggests the Wrong Legal Standard.................................. 1

        1. *Lifetime* Does Not Help Thermo................................................................ 1

        2. Bald Factual Allegations Are Not Enough. .............................................. 3

        3. Explanations in Thermo's Brief Are Insufficient to Avoid Dismissal...................................................................................................4

        4. Thermo's Improper Mixing and Matching of Passages............................. 5

    B. Plaintiffs' Allegations of Induced Infringement Are Insufficient.......................... 7

        1. Thermo Fails to Show Knowledge of the '386 and '553 Reissue Patents. ..................................................................................................... 7

        2. Thermo Fails to Show Specific Intent to Induce Infringement................... 8

    C. Thermo's Allegations of Willful Infringement Are Insufficient. ......................... 10

III. CONCLUSION.............................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................3, 9

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
    2016 WL 1719545 (N.D. Cal. Mar. 9, 2016)........................................................................6

*Ball Aerosol and Speciality Container, Inc. v. Limited Brands, Inc.*,
    555 F.3d 984 (Fed. Cir. 2009).................................................................................................6

*Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*,
    654 F. App'x 80 (3d Cir. 2016) ..........................................................................................3, 9

*Confluent Surgical, Inc. v. Hyperbranch Med. Tech., Inc.*,
    2017 WL 4804264 (D. Del. Oct. 25, 2017) ..........................................................................10

*Diamond Grading Techs. Inc. v. Am. Gem Soc'y*,
    2016 WL 3902482 (E.D. Tex. Mar. 30, 2016) ..................................................................7, 10

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010).................................................................................................6

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)..........................................................................................................7, 8

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
    438 F.3d 1354 (Fed. Cir. 2006).................................................................................................5

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
    2017 WL 1312942 (D. Del. Apr. 5, 2017)..............................................................................9

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017).............................................................................................2, 5

*Mallinckrodt Hospital Prods. IP Ltd. v. Praxair Distribution, Inc.*,
    2017 WL 3867649 (D. Del. Sept. 5, 2017)............................................................................6

*Mallinckrodt, Inc. v. E-Z-Em Inc.*,
    670 F. Supp. 2d 349 (D. Del. 2009).........................................................................................8

*MONEC Holding v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012)..................................................................................8, 10

*Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*,
    2014 WL 4675316 (D. Del. Sept. 19, 2014) ............................................................... 8, 9

*Pragmatus AV, LLC v. Yahoo! Inc.*,
    2012 WL 6044793 (D. Del. Nov. 13, 2012) ................................................................... 2

*Raindance Technologies, Inc. v. 10x Genomics, Inc.*,
    2016 WL 927143 (D. Del. Mar. 4, 2016) .................................................................... 2, 3

*Scripps Research Inst. v. Illumina, Inc.*,
    2016 WL 6834024 (S.D. Cal. Nov. 21, 2016) ................................................................ 3

*Sentius Int'l, LLC v. Microsoft Corp.*,
    78 F. Supp. 3d 967 (N.D. Cal. 2015) ......................................................................... 7, 10

*State Indus. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985) ..................................................................................... 8

*Trustees of Boston University v. Everlight Electronics Co., Ltd.*,
    212 F. Supp. 3d 254 (D. Mass. 2016) ............................................................................ 9

*Varian Med. Sys., Inc. v. Elekta AB*,
    2016 WL 3748772 (D. Del. July 12, 2016) .................................................................. 10

*ViaTech Tech. Inc. v. Microsoft Corp.*,
    2017 WL 2538570 (D. Del. June 12, 2017) ................................................................... 6

*Xpoint Techs., Inc. v. Microsoft Corp.*,
    730 F. Supp. 2d 349 (D. Del. 2010) ......................................................................... 8, 10

*Yama Capital LLC v. Canon Inc.*,
    2013 WL 6588589 (S.D.N.Y. Dec. 13, 2013) ................................................................ 5

*Zimmer Surgical, Inc. v. Stryker Corporation*,
    2017 WL 1296026 (D. Del. April 6, 2017) ................................................................. 2, 7

*Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988) ....................................................................................... 3-4

## I. INTRODUCTION

Thermo's Opposition fails to vindicate the Complaint's numerous deficiencies under *Iqbal/Twombly*. Thermo's adherence to the lower standard of abrogated Form 18 does not save its claims under the relevant *Iqbal/Twombly* standard. Under this correct legal standard, Thermo's Complaint fails to identify facts that plausibly support its claims:

- For direct infringement, Thermo's Complaint asserts apparatus claims and thus must include facts that address each limitation of at least one asserted apparatus claim of each asserted patent. But neither the *Iqbal/Twombly* cases nor cases from this Court permit a plaintiff to do so by merely quoting a claim limitation followed by a stark citation to documents; rather, Thermo must "relate" its factual assertions to the asserted claim and show how the product, *as sold*, meets every limitation of the claims.

- For induced infringement, Thermo's Complaint must allege facts showing that Agilent (1) knew of the asserted patents and (2) had specific intent to cause infringement. Thermo cannot meet the knowledge requirement by simply pointing to 35 U.S.C. § 252 as courts have uniformly held. And Thermo's boilerplate allegations fail to plead specific intent, particularly in the context of Thermo's multi-year delay and silence.

- For willful infringement, Thermo's Opposition also merely (but ineffectively) attempts to sidestep the fact that the Complaint does not, for the reissue patents, plead facts that plausibly demonstrate knowledge of the asserted reissue patents, or—for all of the patents, given Thermo's delay and silence—plead facts that plausibly support an inference that Agilent acted recklessly or egregiously.

To be sure, Agilent is not demanding that Thermo's complaint had to present the detail of an expert's report, but Agilent is entitled to understand—beyond rote allegations and disconnected citations—why Thermo dragged it into Court after years of silence. Thermo's Complaint fails to provide that basic information. Respectfully, it should be dismissed.

## II. ARGUMENT

### A. Thermo's Opposition Suggests the Wrong Legal Standard.

#### 1. *Lifetime* Does Not Help Thermo.

While Thermo recognizes, as it must, the Supreme Court's *Iqbal/Twomby* decisions, it fails both in its Complaint and Opposition to apply the standards set by those decisions. Instead,

Thermo strongly implies that the Federal Circuit held in *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372 (Fed. Cir. 2017), that there is no "distinction" between the pleading standard set by abrogated Form 18 and *Iqbal/Twombly*. (Opp. at 4.) But the Court made no such holding; instead, it explicitly explained that it had never addressed that distinction and that it "need not resolve the question." *Id.* at 1377. Thus, *Lifetime* does not support Thermo's contention that the *Iqbal/Twomby* standard, and its Complaint, requires no more detail than Form 18. Cases in this District have held otherwise. *Zimmer Surgical, Inc. v. Stryker Corporation*, C.A. No. 16-679, 2017 WL 1296026, at *5–6 (D. Del. Apr. 6, 2017) (report and recommendation), *adopted in relevant part*, C.A. No. 16-679, 2017 WL 3736750 (D. Del. Aug. 30, 2017); *Raindance Technologies, Inc. v. 10x Genomics, Inc.*, C.A. 15-152, 2016 WL 927143 (D. Del. Mar. 4, 2016).

Tellingly, while Thermo admonishes Agilent for not citing to *Lifetime,* Thermo fails to point this Court to the Federal Circuit's "important" warning in *Lifetime* regarding the limits of its decision:

> It is important to note that the limited scope of the district court's decision similarly limits our own review. Its decision to dismiss Lifetime's direct infringement count was based solely on the conclusion that Trim-Lok only made one component of the patented invention. . . . We need not, and ***do not, express any other opinion relating to the level of detail contained in Lifetime's SAC***.

*Lifetime*, 869 F.3d at 1377 (emphasis added). Given its very limited holding, *Lifetime* neither stands for the broad propositions Thermo asserts, nor does it help Thermo justify its inadequate Complaint.[1] Ultimately, the Complaint must plausibly show that Agilent practices every limitation of at least one patent claim. *Zimmer Surgical*, 2017 WL 1296026, at *5.

---

[1] Contrary to Thermo's argument, Third Circuit, not Federal Circuit, law controls. (Opp., at 7.) *See, e.g.*, *Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902, 2012 WL 6044793, at *2 (D. Del. Nov. 13, 2012) (Burke, J.) (report and recommendation) *adopted*, C.A. No. 11-902, 2013 WL 2295344 (D. Del. May 24, 2013) (Stark, J.) ("In a patent case, a motion to dismiss for failure to state a claim is reviewed under the law of the regional circuit. . . . [A]lthough Federal Circuit

2

### 2.     Bald Factual Allegations Are Not Enough.

Relying only on *Lifetime,* Thermo argues that "[n]othing in the case law cited by either side requires 'explanation' of the factual allegations [in the complaint]." (Opp. at 8.) Thermo's argument, however, ignores the very clear rulings of courts in this district (and others), which have dismissed complaints where the plaintiff made "no attempt to relate any [of its] factual assertions with any of the asserted claims." *Raindance*, 2016 WL 927143, at *2 (emphasis added); *see also, e.g.*, *Scripps Research Inst. v. Illumina, Inc.*, No. 16-cv-661, 2016 WL 6834024, at *6 (S.D. Cal. Nov. 21, 2016) (dismissing complaint that did not "*explain how*" each feature of the accused product "plausibly meets the limitations" of the representative claims) (emphasis added).

Thermo also exacerbates its legal errors when it asserts, without support, that whatever gaps exist between its factual allegations and the claim elements are smoothed over by inferences supplied from the viewpoint of an "expert." (Opp., at 7, 16.) That is not the law. Instead, courts identify "reasonable inferences" from the words in the complaint based on their own "judicial experience and common sense," not from what an expert might understand. *Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 F. App'x 80, 106 (3d Cir. 2016) (rejecting inference). Thermo improperly attempts to leverage this legal misstatement by showering its Opposition with technical terms and conclusory assertions of infringement. But the technical terms explained in the Opposition (as opposed to the Complaint) do not permit a reasonable inference of infringement. (Opp. at 9-11.) "It is one thing to set forth theories in a brief," but "quite another to make proper allegations in a complaint." *Pa. ex rel. Zimmerman v.*

---

decisions on such issues are not considered binding, courts have considered the reasoning in those cases as strongly persuasive authority.").

*PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Id.* (citation omitted).

### 3. Explanations in Thermo's Brief Are Insufficient to Avoid Dismissal.

When addressing the limitations Agilent used to exemplify the deficiencies of Thermo's direct infringement allegations, Thermo provides explanations where none appear in the Complaint. (Opp., at 9–11.)  And those explanations, Thermo argues (using the perspective of an expert), support the requisite inferences.  Thermo loads its explanations with technical jargon to obfuscate its failure to address the deficiencies identified by Agilent.  For example, claim 28 of the '386 Patent requires the mass spectrometer "to itself" "*generate[s]* . . . artefact ions" (Agilent Br. at 6), and for direct infringement, the device must perform that function in context of the other limitations of the claim, and as sold.  In response to Agilent's showing that Paragraph 31 of the Complaint fails to prove that the accused devices, as sold, are configured to do so, Thermo merely points to a passage in one of a series of Agilent presentations that comprise Complaint Exhibit D, which says that ICPMS devices generally can generate artefact ions.  (Opp., at 9; Compl., at ¶ 31).

In its Opposition, Thermo cites to Exhibit D at page 9 for identification of the phrases "target analyte ion" and "interfering ions."  But merely identifying those common phrases misses the point.  For example, page 10 of Exhibit D, explains that interfering artefact ions are not always generated—it will depend on the experiment, the user's configuration, and the sample chosen by the user.  Compl., Exh. D at 10 ("Not all analytes suffer from spectral interferences that need to be removed by MS/MS operation.").  And, Figure 4 of page 10 also shows that the device may be operated in MS/MS mode (as represented generally in page 9 of Exhibit D relied upon by Thermo overtly) without meeting other requirements of the asserted claim.  As a result, describing the "product generally" as Thermo purports to do through its Complaint is insufficient.  Thermo thus

4

cannot show that the accused Agilent 8800 device, as sold, generates ions without configuration by the users and selection by the user of a sample that might generate analyte ions.

Thermo similarly fails to establish infringement in Count Five (¶¶ 86, 87), because Thermo's mix and match passages not only fail to show that the device as sold infringes, but those passages actually show that the accused products could be used in different operating modes that are mutually exclusive. (Opp., at 7–8.) Thermo "cannot find infringement in isolated claim limitations, taken out of context, that are unrelated to other limitations that together (and only together) constitute the claimed [system]." *Yama Capital LLC v. Canon Inc.*, No. 12-cv-7159, 2013 WL 6588589, at *4 (S.D.N.Y. Dec. 13, 2013).[2]

**4.     Thermo's Improper Mixing and Matching of Passages.**

Thermo's attempt to argue that it cites passages from various sources to show how the device works "generally" demonstrates why its direct infringement allegations fail and must be dismissed. Thermo has to show the Agilent 8800, as sold, specifically infringes—not that the Agilent 8800 is capable of many uses generally, as described above. The claim limitations addressed by Paragraphs 86 and 87 require specific configurations—not mere capabilities: "the first mass filter stage *is configured* . . ." and "the second mass filter stage *is configured* . . . ." The documents Thermo cites establish that the accused product can be configured by end users in many different ways to perform many different experiments; that some end users may select to operate the device in unique "mode[s]" or "proposed configuration[s]" is not direct infringement of an

---

[2]     Thermo's only response to *Yama Capital* is to say that it does not address pleading standards on a motion to dismiss. (Opp. at 5–6.) But Agilent did not cite it for that purpose; rather, Agilent cited that case, as well as the others criticized by Thermo, to explain how courts have viewed proof of infringement. Indeed, in *Lifetime,* the Federal Circuit did exactly that when it cited to *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1362 (Fed. Cir. 2006). *Lifetime*, 869 F.3d at 1378.

5

apparatus claim. The Complaint does not and cannot allege that the Agilent 8800 actually *is* infringing as sold, but only that it "can be" used in an allegedly infringing way. (Compl., at ¶¶ 18, 31, 33, 86.) Thus, Thermo's Complaint fails to state a plausible claim of direct infringement of any asserted product claim. Indeed, dismissal for failure to state a claim is proper where a complaint alleges merely the ability to infringe an apparatus claim. *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-cv-05469, 2016 WL 1719545, at *3 (N.D. Cal. Mar. 9, 2016).

Thermo attempts to avoid dismissal by shoehorning this case into *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010). But in *Finjan,* the court reiterated that:

> to infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode. Thus, depending on the claims, an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of noninfringing modes of operation.

*Finjan*, 626 F.3d at 1204 (internal citations omitted). The holding of *Finjan* is thus limited to claims that require only "capability," not claims that require a specific configuration. *See Ball Aerosol and Speciality Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 994 (Fed. Cir. 2009) (finding no infringement because "the language of claims 1 and 5 of the '969 patent [requires that] the accused product is **configured with** the cover being used as a base underneath a candle holder with feet") (emphasis added); (*ViaTech Tech. Inc. v. Microsoft Corp.*, C.A. No. 14-1226, 2017 WL 2538570, at *5-6 (D. Del. June 12, 2017) (rejecting application of *Finjan* because claim "requires more than capability in relevant part"); *Mallinckrodt Hospital Prods. IP Ltd. v. Praxair Distribution, Inc.*, C.A. No. 15-170, 2017 WL 3867649, at *22 (D. Del. Sept. 5, 2017) (explaining that *Finjan* and similar Federal Circuit cases are limited to claims requiring only capability).

In sum, the "configured to" language of the claims is the antithesis of the "capable of" or "capacity to" claim language that would be necessary to support Thermo's argument. Because all of the asserted apparatus claims indisputably require a spectrometer that is "*configured to*" operate

6

in a specific manner, but the Complaint merely alleges that the accused products are *capable of* such operation, the allegations fail as a matter of law to state a claim of direct infringement.

### B. Plaintiffs' Allegations of Induced Infringement Are Insufficient.

#### 1. Thermo Fails to Show Knowledge of the '386 and '553 Reissue Patents.

Counts Two and Six, alleging indirect infringement of the '386 and '553 reissue patents respectively, are inadequate because Agilent did not and could not have knowledge of these patents before they existed.[3] Indeed, the Supreme Court held that induced infringement requires knowledge of the existence of the patent in suit – not a predecessor patent. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011) (requiring "knowledge of the existence of the patent that is infringed"). In response, Thermo asserts—with no case support—that knowledge of the predecessor patent should carry over to any reissue patent that has one or more "substantially identical" claims, by operation of 35 U.S.C. § 252. (Opp., at 13–15.) That exact argument was considered and rejected in *Diamond*:

> However, § 252 . . . do[es] not speak to notice . . . . In a reissue proceeding, the patentee statutorily 'surrender[s]' the original patent and the patent is then re-issued by the PTO 'in accordance with a new and amended application.' 35 U.S.C. § 251. ***Claims may be cancelled, amended, or added during this process, and the scope of these reissue claims is not foreseeable ex ante***. The existence of the 'RE963 Patent and the scope of the 'RE963 Patent's claims are not facts that can be ascertained merely from notice of the original '673 Patent. Plaintiff's allegation that the scope of the 'RE963 Patent's claims turned out to be similar or even identical to the '673 Patent's claims is beside the point.

*Diamond*, 2016 WL 3902482, at *2 (emphasis added). While Thermo may disagree with *Diamond*, it offers no contrary authority.

---

[3]   *See Zimmer*, 2017 WL 1296026, at *5–6 (knowledge of predecessor "[p]atent is insufficient to infer the requisite knowledge of the . . . Reissue Patent"); *Sentius Int'l, LLC v. Microsoft Corp.*, 78 F. Supp. 3d 967, 975–76 (N.D. Cal. 2015) ("knowledge of the [predecessor] patent" insufficient, and reissue must "exist[] at the time [of] pre-suit contact"); *Diamond Grading Techs. Inc. v. Am. Gem Soc'y*, No. 14-cv-1161, 2016 WL 3902482, at *2 (E.D. Tex. Mar. 30, 2016).

7

Nor is *Diamond* anomalous in its reasoning or result. The same rule applies to reexamination proceedings, pursuant to the same statute.[4] *MONEC Holding v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012) (finding "no authority indicating that actual knowledge of an original patent is equivalent to actual knowledge of a reexamined patent . . . such an inference is too tenuous even at the pleading stage"). And the same rule applies to patent prosecution, for the same reasons. *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("[T]he scope of the claims . . . that do issue . . . is . . . totally unforeseeable.").

Thermo does not and cannot plausibly allege that Agilent had knowledge of the reissue patents before they existed, and therefore, Counts Two and Six should be dismissed.[5]

### 2.     Thermo Fails to Show Specific Intent to Induce Infringement.

Thermo fares no better in its attempt to show that the Complaint plausibly alleges actual knowledge by Agilent that infringement has occurred. Like the Complaint, Thermo's Opposition does not address the requirement of *Global-Tech*, 563 U.S. at 766, that the defendant must *actually know* its products are infringing or else "subjectively believe that there is a high probability" that its products infringe. This Court has held that knowledge of the patent does not substitute for a plausible allegation of knowledge of infringement. *Neology, Inc. v. Kapsch Trafficcom IVHS, Inc.*, C.A. No. 13-2052, 2014 WL 4675316, at *6 (D. Del. Sept. 19, 2014) (Burke, J.) (dismissing induced infringement claims for insufficient detail regarding actual knowledge of infringement despite alleged knowledge of the patents). That Thermo's Complaint references a November 2012

---

[4]     Thermo baselessly asserts that reissue proceedings filed more than two years after a patent issues should be treated specially because the "claims can only maintain their original scope or be narrowed." (Opp., at 15.) Of course, that is true of reexamination proceedings as well.

[5]     Note, moreover, Thermo's apparent concession that the "requisite knowledge [for induced infringement] can[not] be established by the filing of the Plaintiffs' Complaint." *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 354 (D. Del. 2009); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010).

8

letter, which in the barest terms alleged infringement of four patents (three of which are not asserted here), while also ignoring Agilent's response that asked Thermo for more detail to which Thermo never responded for over four years does not plausibly show that Agilent continuously—over the last *five years*—knew its products infringed. (Opening Brief, Exhibit A.) Similar notices have been held insufficient. *See Neology*, 2014 WL 4675316, at *6; *IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*, C.A. No. 16-134, 2017 WL 1312942, at *4 (D. Del. Apr. 5, 2017).

Contrary to Thermo's assertions, the Court is certainly entitled to consider the entire undisputed sequence of events—including the five years of silence here—in light of its own "judicial experience and common sense." *Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Trustees of Boston University v. Everlight Electronics Co., Ltd.*, 212 F. Supp. 3d 254, 257 (D. Mass. 2016) (holding infringement was not willful because defendant "presented [its] non-infringement position" to plaintiff, and thereafter "[f]rom January 2008 to the filing of the [complaint in 2012, plaintiff] did not take any action against [defendant] for its infringement"). And Thermo's out-of-context and unsupported theory based on 35 U.S.C. § 286 has nothing to do with pleading facts regarding Agilent's state of mind. Rather, Agilent's state of mind, particularly years after its final pre-suit contact with Thermo, is readily inferable: Agilent believed not only that its products did not infringe any valid claim, but moreover, that Thermo agreed and there was no outstanding dispute between the parties. The alternative inference advanced by Thermo—that Agilent *actually knew* it infringed but went ahead tallying up potential treble damages for a period of five years without taking any proactive steps to steel itself against the inevitable confrontation—is plainly unsupported by the Complaint, and unwarranted in view of "judicial experience and common sense." *Bull*, 654 F. App'x at 106. Counts Two, Four, and Six are subject to dismissal.

9

### C. Thermo's Allegations of Willful Infringement Are Insufficient.

A plausible allegation of willful infringement requires not only knowledge of the patent alleged to be willfully infringed, but also a specific "articulat[ion of] how the [alleged conduct] actually amounted to an egregious case of infringement of the patent." *Varian Med. Sys., Inc. v. Elekta AB*, C.A. No. 15-871, 2016 WL 3748772, at *8 (D. Del. July 12, 2016) (Burke, J.).

Thermo cannot plausibly allege knowledge of the reissue patents by reference to their predecessor patents for willful infringement. *Diamond*, 2016 WL 3902482, at *2; *MONEC*, 897 F. Supp. 2d at 232; *Sentius*, 78 F. Supp. 3d at 975–76 ("Sentius again argues that pre-suit knowledge of the reissue patents may be 'inferred' due to Microsoft's knowledge of the [predecessor] patent," "[b]ut as explained above, there is no basis for drawing such an 'inference.'"). And regardless of knowledge, the Complaint plainly fails to provide anything more than a rote legal conclusion that Agilent's "infringement . . . is willful." Thermo rattles off hollow parentheticals that purport to "distinguish[]" away the legal requirement that a complaint must "articulate how the [alleged conduct] actually amounted to an egregious case of infringement of the patent." *Varian*, 2016 WL 3748772, at *8; *Xpoint*, 730 F. Supp. 2d at 357 ("[A] mere recitation of the elements . . . is insufficient."). Yet Thermo fails to cite even a single supporting opinion from the District of Delaware. (Opp., at 17–18.) None of Thermo's cases overcomes the majority rule—and the rule of this Court—under which the conclusory allegations of willful infringement in the Complaint are plainly inadequate and subject to dismissal. *Confluent Surgical, Inc. v. Hyperbranch Med. Tech., Inc.*, C.A. No. 17-688, 2017 WL 4804264, at *1 (D. Del. Oct. 25, 2017) (Burke, J) ("Plaintiffs have to do more than merely track the statutory language—they have to allege facts that go beyond a formulaic recitation of the elements of their cause of action.").

### III. CONCLUSION

Agilent respectfully requests dismissal of all claims in the Complaint.

|  |  |
|---|---|
|  | Respectfully submitted, |
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Mark Reiter<br>GIBSON DUNN & CRUTCHER LLP<br>2100 McKinney Avenue<br>Dallas, TX  75201<br>Tel:  (214) 698-3100 | By:  */s/ Stephanie E. O'Byrne*<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Stephanie E. O'Byrne (#4446)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE  19801<br>    Tel:  (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br>    sobyrne@potteranderson.com |
| Brian M. Buroker<br>GIBSON DUNN & CRUTCHER LLP<br>1050 Connecticut Ave., N.W.<br>Washington, DC  20036-5306<br>Tel:  (202) 955-8500 |  |
| David Glandorf<br>GIBSON DUNN & CRUTCHER LLP<br>1801 California Street, Suite 4200<br>Denver, CO  80202<br>Tel:  (303) 298-5700 | *Attorneys for Defendant<br>Agilent Technologies, Inc.* |
| Anne Y. Brody<br>GIBSON DUNN & CRUTCHER LLP<br>3161 Michelson Drive<br>Irvine, CA  92612<br>Tel:  (949) 451-3800 |  |
| Colby A. Davis<br>GIBSON DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA  90071<br>Tel:  (213) 229-7000 |  |
| Dated:  October 31, 2017<br>5509200 / 44416 |  |