

David M. Fry
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0705 - Direct
dfry@shawkeller.com

November 16, 2017

**BY CM/ECF AND HAND DELIVERY**
The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re: *Thermo Fisher Scientific Inc., et al., v. Agilent Technologies, Inc.*,
           C.A. No. 17-600-LPS-CJB

Dear Judge Burke:

The parties hereby submit the enclosed checklist and proposed scheduling order.

### I.    Case Description

This is a case for patent infringement brought by Thermo Fisher Scientific Inc. and Thermo Fisher Scientific (Bremen) GmbH (collectively "Thermo Fisher") against Agilent Technologies, Inc. ("Agilent"). Thermo Fisher alleges that Agilent has directly and indirectly infringed claims of three Thermo Fisher patents through Agilent's making, using, selling, offering for sale and/or importation of certain mass spectrometers. Agilent has not yet answered Thermo Fisher's complaint, but instead moved to dismiss under 12(b)(6) because Agilent alleges that Thermo Fisher's complaint fails sufficiently to plead infringement.

### II.    Scheduling Order Disputes

The parties' proposed scheduling order indicates where disputes remain (Ex. A), and, for the Court's convenience, the parties provide a summary of the same in chart format (Ex. B). The row number corresponding to a dispute in the chart is identified in brackets below.

#### A.    Thermo Fisher's Position

1. <u>Case Schedule</u>. Thermo Fisher has proposed an efficient and reasonable schedule for initial disclosures, fact discovery, and expert discovery that track the Court's default deadlines. Thermo Fisher has also proposed deadlines that are consistent with the Court's standard practice of moving the case forward while motions to dismiss or *Markman* issues are pending, such as the proposed dates for completion of document production [12] and exchange of expert reports [21-23] and discovery [24] that are independent of the Court's resolution of any pending disputes.

In contrast, Agilent seeks to unnecessarily delay entry of a scheduling order while its motion to dismiss is pending, lengthen the time for early contention exchanges [4], and backload fact and expert discovery until after the Court issues its *Markman* order, resulting in *de facto* stays of discovery while Agilent's motion to dismiss and *Markman* issues are pending. Agilent's proposal would further delay the case by tying deadlines for document production [12], fact discovery [17], and expert reports [21-22] to the Court's issuance of a *Markman* decision. Such delays would prejudice the Court and Thermo Fisher by: (a) depriving the Court and Thermo

S<small>HAW</small> K<small>ELLER</small> <small>LLP</small>
The Honorable Christopher J. Burke
Page 2

Fisher of factual context for *Markman*; (b) leaving only 45 days in which to conduct depositions and resolve any discovery disputes; and (c) requiring Thermo Fisher to determine whether to amend its pleadings without the benefit of any discovery. There is also no good reason to delay expert reports. If the Court has not resolved the *Markman* issues before the report deadlines, the parties' experts can opine under both parties' proposed constructions, as is routinely done.

      2. <u>Limitations on Asserted Claims Is Premature</u>. Thermo Fisher's Complaint identifies six claims from three patents, two of which share a common specification, and Thermo Fisher has no intention of expanding the scope of the case to an unreasonable number of claims in its infringement contentions. Thus, there is no need to depart from the Court's form scheduling order by including dates for reducing asserted claims [6, 18], particularly when Thermo Fisher will not have had the benefit of substantial discovery. The case on which Agilent has heavily relied, *Yodlee*, is inapposite, as it involved "the somewhat unique procedural context of having seven patents, 162 claims and a pending 101 motion at the 12(b)(6) stage." *Yodlee, Inc. v. Plaid Techs. Inc.*, No. 14-1445-LPS-CJB, D.I. 61 at 140 (May 4, 2015). This case does not involve the same "unique procedural context," and until the parties have exchanged their infringement and invalidity contentions, any discussions about narrowing the case are simply premature.

      3. <u>Scope of Discovery</u>. Thermo Fisher proposes the default number of custodians (10) to be identified under Paragraph 3 of the Court's Default Standard [3]. If Agilent identifies fewer than 10 custodians in its disclosures, it can explain why it does not have any additional custodians to identify at that time. The Court should not limit this discovery prematurely and in a vacuum, as Agilent proposes. Thermo Fisher also proposes, consistent with the Court's form scheduling order, that the parties can serve reply expert reports to develop a more complete record of the experts' opinions [23]. If Agilent does not wish to submit such reports, it need not do so, but Agilent has provided no valid basis to depart from the Court's standard procedure. Finally, consistent with the Court's form scheduling order, the parties should be required to finally identify all accused products and invalidity references by a date certain [20]. Again Agilent provides no basis for departing from this requirement, and its proposal unfairly prevents Thermo Fisher from identifying accused products uncovered during discovery, while permitting Agilent to supplement its invalidity references with the full benefit of fact discovery.

      4. <u>Length of Trial</u>. A seven day trial is appropriate [29], as this case involves mass spectrometer technology with which a jury would not generally be familiar, and jury trial days generally permit less time on the record than in bench trials. Although the parties will work to make their trial presentations as efficiently as possible, five days is likely insufficient.

      **B.**      **Agilent's Position**

      Plaintiff Thermo Fisher asserts that Defendant Agilent infringes three patents; however, as explained in Agilent's pending Rule 12(b)(6) motion to dismiss, Thermo Fisher's complaint fails to assert plausible claims of infringement and should be dismissed. The deficiencies in Thermo Fisher's complaint present many problems for efficiently conducting discovery, and, as a result, Agilent proposes that the Court defer entry of a scheduling order while the 12(b)(6) motion is still pending. But if the Court enters a schedule at this point, that schedule should require Thermo Fisher to focus this case and the identification of accused products should be set 60 days out to allow time for the Court to decide the motion to dismiss [Row 4].

**Case narrowing should be required.** Collectively, Thermo Fisher's three asserted patents contain 150 claims. Yet Thermo Fisher refuses to place limits on the number of patent claims it can assert at any time in the schedule, including trial. So that the parties can effectively manage discovery, while also narrowing the issues to be decided by the Court, Thermo Fisher should, as this Court has done in prior cases, be required to narrow the number of claims at two important events in the case: First, Thermo Fisher should be limited to 21 total claims at the time of the initial infringement contentions [Row 6]; second, the Court should require Thermo Fisher to further limit its asserted claims to 9 claims at the time it serves its final infringement contentions [Row 18]. These limits adhere to those set by the Court in the *Yodlee v. Plaid* matter. Civ. Act. No. 1:14-cv-01445-LPS-CJB at No. 26 (May 6, 2015). The Court should also reject Thermo Fisher's proposal to allow for "supplementation" of accused products and invalidity references after fact discovery closes [Row 20]. Setting a date that late in discovery to add products invites sandbagging and almost certainly would require additional Markman briefing and fact discovery. The list of accused products should be governed by the initial infringement contentions, which Thermo Fisher can modify with leave of Court.

**Amendment of pleadings should occur before Markman and before completion of document production.** Thermo Fisher's proposal to postpone the deadline to amend pleadings as of right until August of 2018 [Row 15] (after Markman briefing begins) coupled with an early deadline for substantial completion of document discovery (it proposes June 8, 2018 – five months before fact discovery closes) should be rejected. That would allow Thermo Fisher to ask for wide-ranging discovery of documents and then potentially add parties, patents or causes of action well after the parties' Markman positions are submitted. This case needs to be narrowed – not expanded – and certainly not after Markman starts. Neither can Thermo Fisher explain why it requires substantial completion of document production five months prior to the close of fact discovery and well before the parties even exchange Markman briefs [Row 12].

**Electronic discovery should be limited.** Electronic discovery in this case should be limited to five (5) custodians [Row 3]. Based what Agilent can glean from the complaint, only a single product line is at issue – Thermo Fisher's demand for ten custodians, like its deficient complaint and request to add products on the last day of discovery, evidences Thermo Fisher's uncertainty regarding the merits of its allegations.

**Other deadlines should trigger from Markman order rather than setting fixed deadlines.** Completion of fact discovery and the beginning of expert discovery should trigger from when the Markman order is issued, just as the Court ordered in Civ. Act. No. 1:14-cv-01445-LPS-CJB at No. 26 (May 6, 2015) [Rows 17-25] and allowing reply expert reports will just complicate this case and allow for disputes over whether content in the reply is responsive to the opposition or a new theory [Row 23]. Ensuring that the schedule provides sufficient time after the Markman Order avoids the need to file extensions should the Order be issued too close to a fixed fact discovery deadline.

### III. Three Most Significant Items Discussed from the Court's Checklist

The parties have discussed the Court's case management checklist. While we expect these discussions to continue, we have not identified any issues that require immediate attention.

SHAW KELLER LLP
The Honorable Christopher J. Burke
Page 4

                              Respectfully submitted,

                              */s/ David M. Fry*

                              David M. Fry (No. 5486)

cc:    Clerk of the Court (via hand delivery)
        All Counsel of Record (via CM/ECF and e-mail)