## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THERMO FISHER SCIENTIFIC INC. and THERMO FISHER SCIENTIFIC (BREMEN) GMBH, | ) ) ) | |
| | ) | C.A. No. 17-600-LPS-CJB |
| Plaintiffs, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| AGILENT TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) | |

## AGILENT TECHNOLOGIES, INC.'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO STAY PENDING *INTER PARTES* REVIEW
## OF THE ASSERTED PATENTS

OF COUNSEL:

Mark Reiter
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX  75201
Tel:  (214) 698-3100

Brian M. Buroker
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC  20036-5306
Tel:  (202) 955-8500

David Glandorf
GIBSON DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202
Tel:  (303) 298-5700

Anne Y. Brody
GIBSON DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612
Tel:  (949) 451-3800

Dated:  December 15, 2017
5586622 / 44416

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant
Agilent Technologies, Inc.*

OF COUNSEL:

Colby A. Davis
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Tel:  (213) 229-7000

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................................ 1

II.    STATEMENT OF FACTS ............................................................................... 2

III.   LEGAL STANDARD........................................................................................ 3

IV.    ARGUMENT..................................................................................................... 4

       A.     A Stay Will Simplify This Case............................................................. 5

       B.     The Litigation Is at an Early Stage. ...................................................... 9

       C.     A Stay Will Not Unduly Prejudice Thermo........................................ 11

              1.     Agilent's IPR Petitions Were Timely. ....................................... 11

              2.     Agilent's Request for a Stay Is Timely...................................... 12

              3.     The Expected Duration of the IPR Proceedings Is Reasonable in
                     Light of the Relationship Between the Parties.......................... 12

V.     CONCLUSION................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*,
 C.A. No. 15-595, 2016 WL 6594083 (D. Del. Nov. 7, 2016) ...................................................4

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
 C.A. No. 06-514, 2007 WL 2892707 (D. Del. Sept. 30, 2007) .............................................11

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
 C.A. No. 08-63, 2010 WL 3522327 (D. Del. Sept. 2, 2010) ..................................................11

*CallWave Commc'ns, LLC v. AT & T Mobility, LLC*,
 C.A. No. 12-1701, 2015 WL 1284203 (D. Del. Mar. 18, 2015)..............................................10

*CFRD Research, Inc. v. Spotify USA Inc.*,
 C.A. No.14-315 (D. Del. June 3, 2015) ...................................................................................9

*Contour IP Holding, LLC v. GoPro, Inc.*,
 C.A. No. 15-1108, 2016 WL 4474340 (D. Del. July 14, 2016)................................6, 9, 10, 11

*Credit Acceptance Corp. v. Westlake Servs., LLC*,
 No. 13-cv-01523 (C. D. Cal. Dec. 30, 2013) ........................................................................14

*Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*,
 No. 09-571, 2010 WL 2573925 (D. Del. June 25, 2010) .......................................................10

*Ethicon, Inc. v. Quigg*,
 849 F.2d 1422 (Fed. Cir. 1988)................................................................................................3

*Ever Win Int'l Corp. v. Radioshack Corp.*,
 C.A. No. 11-1104, 902 F. Supp. 2d 405 (D. Del. 2012) ................................................ *passim*

*First Am. Title Ins. Co. v. Maclaren, LLC*,
 C.A. No. 10-363-LPS, 2012 WL 769601 (D. Del. Mar. 9, 2012) ........................................3, 6

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
 721 F.3d 1330 (Fed. Cir. 2013)................................................................................................1

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*,
 802 F.2d 1367 (Fed. Cir. 1986)................................................................................................6

*Landis v. North Am. Co.*,
 299 U.S. 248 (1936)................................................................................................................3

*Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*,
 C.A. No. 12-780, 922 F. Supp. 2d 486 (D. Del. 2013)................................................9, 10, 11

# TABLE OF AUTHORITIES
(con't)

Page(s)

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
  C.A. No. 12-1744, 2013 WL 3353984 (D. Del. July 2, 2013)........................................ *passim*

*Novartis AG v. HEC Pharm. Co. Ltd.*,
  183 F.Supp.3d 560 (D. Del. 2016).....................................................................................3, 5

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
  C.A. No. 00-120, 2003 WL 21105073 (D. Del. May 14, 2003)..............................................4

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
  No. 12-cv-1461, 2014 WL 3819458 (D. Del. Jan 15, 2014) ......................................... *passim*

*Round Rock Research LLC v. Dole Food Cos.*,
  C.A. No. 11-1239, 2012 WL 1185022 (D. Del. Apr. 6, 2012) ................................................6

*SenoRx, Inc. v. Hologic, Inc.*,
  C.A. No. 12-173, 2013 WL 144255 (D. Del. Jan. 11, 2013)..............................................9, 10

*Sunpower Corp. v. Panelclaw, Inc.*,
  C.A. No. 12-1633 (D. Del. May 16, 2014) ...............................................................................9

*Tierravision, Inc. v. Google, Inc.*,
  No. 11-cv-2170, 2012 WL 559993 (S.D. Cal. Feb. 21, 2012)................................................6

*Tse v. Apple Inc.*,
  No. 06-cv-06573, 2007 WL 2904279 (N.D. Cal. Oct. 4, 2007) .......................................... 3-4

*VirtualAgility v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014).....................................................................................13, 14

*Wall Corp. v. BondDesk Grp., LLC*,
  No. 07-cv-844, 2009 WL 528564 (D. Del. Feb. 24, 2009).....................................................12

**Statutes**

35 U.S.C. 314(b), 316(b) ...........................................................................................................12

35 U.S.C. § 314(b) .......................................................................................................................5

35 U.S.C. § 316(e) ..................................................................................................................6, 12

35 U.S.C. § 328(b) .......................................................................................................................1

**TABLE OF AUTHORITIES**
(con't)

Page(s)

**Other Authorities**

157 Cong. Rec. 3417 (2011) .................................................................................................4

**Rules**

FED. R. CIV. P. 26(b) ..........................................................................................................6

FED. R. CIV. P. 16(b) ........................................................................................................10

**Regulations**

37 C.F.R. § 42.51 ................................................................................................................6

37 C.F.R. § 42.100 ..............................................................................................................5

## I.   INTRODUCTION

Years after it first contacted Defendant Agilent Technologies, Inc. ("Agilent") regarding certain of its patents, Plaintiff Thermo Fisher Scientific Inc. and Thermo Fisher Scientific (Bremen) GMBH (together, "Thermo") filed a complaint alleging infringement of one of those patents (U.S. Patent No. 7,230,232 (the "'232 patent")) and patents reissued from two of those patents:  U.S. Patent Nos. RE45,386 (the "'386 patent"), and RE45,553 (the "'553 patent") (all three patents collectively, the "Asserted Patents").   Agilent has moved to dismiss Thermo's complaint due to its impermissible reliance on implausible, conclusory recitations of (at times only a fraction of) the necessary legal elements for its causes of action. D.I. 10–11.  As a result, Agilent has not answered the complaint.  In addition, discovery has not begun and the Court has not set a trial date, although the Court has set a Scheduling Conference for Monday, December 18, 2017.

On December 13–14, 2017, Agilent filed four petitions (the "Petitions") for *inter partes* review ("IPR"), collectively seeking cancellation of *all* the claims of *all* three Asserted Patents for anticipation and/or obviousness.  In total, the Petitions assert 24 separate grounds for invalidity, based on 17 prior art references and four expert declarations.  Agilent respectfully requests that the Court stay this litigation pending resolution of all IPR proceedings.

Agilent makes this request because a stay would greatly reduce, and likely eliminate, the burdens of litigation.  Indeed, if the Patent Trial and Appeal Board ("PTAB") invalidates the six patent claims identified in the complaint on any of the numerous grounds in the Petitions, this case will be "moot."  *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013); *see also* 35 U.S.C. § 328(b).  Even if the PTAB only invalidates some claims, all proceedings with respect to those claims will have been a waste.

Agilent's Motion to Stay—coming as it does when the case is at its infancy, alongside

broad IPR Petitions that seek cancellation of every claim in all the Asserted Patents, and coupled with Thermo's multi-year delay in filing its complaint—presents the paradigmatic situation in which a stay is strongly favored.

## II.   STATEMENT OF FACTS

Thermo filed this action on May 24, 2017, nearly five years after it allegedly provided Agilent with notice of infringement of the '232 patent (D.I. 1 at ¶¶ 21–23), and more than two years after issuance of the reissue '386 and '553 patents in 2015 (*id.* at ¶¶ 9–13). The complaint alleges infringement of six claims: claims 28 and 13 of the '386 patent (*id.* at ¶¶ 28, 40); claims 11 and 30 of the '232 patent (*id.* at ¶¶ 11, 66); and claims 1 and 13 of the '553 patent (*id.* at ¶¶ 80, 93).

On October 10, 2017, Agilent filed a Motion to Dismiss for Failure to State a Claim; that motion is fully briefed and pending. *See* D.I. 10–11. As noted, Agilent has not answered the complaint, discovery has not begun, and no trial date has been set.

On December 13–14, 2017, Agilent filed four petitions with the PTAB seeking *Inter Partes* Review of the three asserted patents, and requesting cancellation of all of the claims—both asserted and unasserted—for anticipation and/or obviousness. *See* Exhibits A–D hereto.

Agilent filed two petitions on the '386 patent (IPR Nos. 2018-00298 and 2018-00313), collectively seeking cancellation of every claim in that patent. Exs. A, B. Together these petitions assert 12 non-redundant grounds for invalidity based on 12 prior art references. Exhibit A at 4; Exhibit B at 4. Agilent's third petition, IPR No. 2018-00297, seeks cancellation of every claim in the '553 patent based on six invalidity grounds and five prior art references. Exhibit C at 4. The fourth petition, IPR No. 2018-00299, seeks cancellation of every claim in the '232 patent based on six invalidity grounds and seven prior art references. Exhibit D at 4. None of the proposed

combinations were considered by the USPTO in either the original prosecutions or the reissue proceedings.

The most recent statistics released by the USPTO show that 70% of all petitions in the field of Electrical/Computer technology are instituted.  Exhibit E at 7.  And 63% of all claims that are instituted in that field are found unpatentable or are cancelled or disclaimed by the patent owner. *Id.* at 14.  Another 23% of such instituted claims are settled before trial in the PTAB.  *Id.*  In sum, it is highly probable that Agilent's Petitions will be instituted and the asserted claims invalidated.

## III.    LEGAL STANDARD

"The power to stay a case is 'incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *First Am. Title Ins. Co. v. Maclaren, LLC*, C.A. No. 10-363-LPS, 2012 WL 769601, at *4 (D. Del. Mar. 9, 2012) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988).  "Whether or not to stay litigation is a matter left to the Court's discretion."  *Novartis AG v. HEC Pharm. Co. Ltd.*, 183 F.Supp.3d 560, 562 (D. Del. 2016) (Stark, J.); *Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744, 2013 WL 3353984, at *1 (D. Del. July 2, 2013) ("A decision to stay litigation lies within the sound discretion of the court . . . .").  "It is well settled that this authority extends to patent cases in which a review by the PTO has been requested [but not acted upon]."  *Neste Oil*, 2013 WL 3353984, at *1; *see also Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, C.A. No. 12-1461, 2014 WL 3819458, at *5, 6 (D. Del. Jan. 15, 2014).

Courts have a "liberal policy in favor of granting motions to stay proceedings pending the outcome of [PTO proceedings], especially in cases that are still in the initial stages of litigation and where there has been little or no discovery."  *Tse v. Apple Inc.*, No. 06-cv-06573, 2007 WL

2904279, at *1 (N.D. Cal. Oct. 4, 2007) (internal quotations omitted).  This "liberal policy" is consistent with Congress's intent that courts should typically stay litigation pending an IPR, absent "an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law."  157 Cong. Rec. 3417 (2011) (remarks of Sen. Schumer); *see also Pegasus Dev. Corp. v. DirecTV, Inc.*, C.A. No. 00-120, 2003 WL 21105073, at *2 (D. Del. May 14, 2003) ("Congress enacted the [review] procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts.").

This Court examines three factors when deciding a motion to stay: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage."  *Princeton*, 2014 WL 3819458, at *2; *454 Life Scis. Corp. v. Ion Torrent Sys., Inc.*, C.A. No. 15-595, 2016 WL 6594083, at *2 (D. Del. Nov. 7, 2016) (Stark, J.).

## IV.  ARGUMENT

Each of the three factors favors granting a stay in this case.  There can be no dispute that the IPR proceedings may completely resolve the issues in this case.  That outcome is, in fact, quite probable in light of the statistics provided by the USPTO.  *See* Exhibit E at 7, 14.  But at a minimum, regardless of the outcome, the IPR proceedings will simplify fact discovery, claim construction, expert discovery, and trial.  And also, regardless of the outcome, the time for which this litigation is stayed will be spent *productively*—in a forum that is specifically designed for rapid, low-cost determination of the numerous invalidity grounds set forth in Agilent's Petitions.

The PTAB is obligated by statute to complete the entire IPR process (the decision whether to institute review, followed by a determination of the merits) within 18 months, and the energies

of the parties and counsel may reasonably be dedicated during that short period of time strictly to disputing the *24 independent grounds* for invalidity. *See* 35 U.S.C. § 314(b); *Princeton*, 2014 WL 3819458, at *5 ("[T]he Director of the PTO must decide whether to grant review within six months of the petition being filed."); 37 C.F.R. § 42.100 ("[P]roceeding[s] shall be administered such that pendency before the Board . . . is normally no more than one year.").

A stay is further supported by Thermo's nearly *five-year delay* in bringing suit since its initial letter to Agilent alleging infringement, and thus there is no risk of prejudice to Thermo from a stay. Without a stay, however, needless duplicative proceedings will take place in this forum and the PTAB, to the detriment of both Parties and the Court.

### A.     A Stay Will Simplify This Case.

A stay will simplify every part of this case, regardless of the outcome of the IPR. First, if "all of the asserted claims are found invalid by the PTO, the 'litigation would be simplified because it would be concluded.'" *Princeton*, 2014 WL 3819458, at *2. "Alternatively, 'should even some of the asserted claims be found invalid, that finding would reduce the number of issues left to be litigated.'" *Id.* If the PTAB grants an amendment to any of the claims, then the subject matter of the Parties' dispute will fundamentally change. *Novartis*, 183 F. Supp. 3d at 562 (emphasizing "the possibility that the scope of the claims to be litigated in this case may change"). It does not make sense to litigate this case on claims that might not exist after the IPR proceedings are over.

Indeed, the potential for simplification in this case is extraordinary, far exceeding that of other cases cited herein. Unlike the usual case, there are *four* IPR petitions here, seeking cancellation of 150 patent claims based on 24 invalidity grounds, 17 prior art references, and four expert declarations. The Petitions and supporting declarations alone weigh in at over 150,000 words. Resolution of the invalidity contentions in the Petitions will require analysis of literally

thousands of pages of dense scientific materials, which the PTAB proceedings are designed to do.

Further, no matter the outcome of the IPR proceedings, the Court would immensely benefit from the "'economy of time and effort for itself, for counsel, and for litigants,'" if these materials are "first considered by the PT[AB] with its particular expertise." *Maclaren*, 2012 WL 769601, at *4; *see also Contour IP Holding, LLC v. GoPro, Inc.*, C.A. No. 15-1108, 2016 WL 4474340, at *3 (D. Del. July 14, 2016) (Burke, J.) ("[T]he PTAB's sound judgment with respect to other claim terms in the two patents . . . or how the art might generally read could be instructive to this Court . . . .") (internal annotations omitted); *Neste Oil*, 2013 WL 3353984, at *4; *Round Rock Research LLC v. Dole Food Cos.*, C.A. No. 11-1239, 2012 WL 1185022, at *1 (D. Del. Apr. 6, 2012) ("[E]ven if [the claims are] neither rejected nor modified, [they] will garner additional prosecution history that may be relevant to claim construction.").

While a stay ensures simplification, denial of a stay would complicate matters further. The parties would need to litigate the Asserted Patents' validity under two different standards of proof (preponderance of the evidence in the IPR and clear and convincing evidence in this case);[1] based on potentially divergent claim construction rulings; under completely different discovery systems (the Board permits far less discovery than is available in district court).[2] Navigating these different systems to resolve the same arguments in two different forums would require "the parties [to litigate] this case on a bed of shifting sand." *Tierravision, Inc. v. Google, Inc.*, No. 11-cv-2170, 2012 WL 559993, at *2 (S.D. Cal. Feb. 21, 2012). That is why courts regularly stay similar

---

[1] *Compare Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) (In the courts, "the [party] attacking validity has the burden of proving invalidity by clear and convincing evidence.") *with* 35 U.S.C. § 316(e) (In IPR proceedings, "the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence.").

[2] *Compare* FED. R. CIV. P. 26(b) (describing the scope of discovery in the federal courts) *with* 37 C.F.R. § 42.51 (describing the scope of discovery in *inter partes* review).

proceedings.  Agilent asks this Court to follow the same path.

That the PTAB has yet to act on Agilent's Petitions does not detract from the clear efficiencies.   Even  in  cases  where  the  PTAB  did  not  yet  institute  review,  this  Court  has acknowledged "numerous ways that [an IPR proceeding] can simplify proceedings at the district court level."  *Princeton*, 2014 WL 3819458, at *2.  Specifically, courts in this District have held that even before a decision by the PTAB to institute IPR proceedings, there are at least seven "important ways" that a stay simplifies and "streamline[s]" the litigation:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pretrial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Neste Oil*, 2013 WL 3353984, at *4.

In this Court's *Princeton* case for example, the complaint was filed in 2012, and the case proceeded through limited claim construction hearings in October 2013.  *Princeton*, 2014 WL 3819458, at *1–2.  In November 2013, one of the four defendants petitioned for an IPR of fewer than three-quarters of the claims of the asserted patent.  *Id.*  At least "three of the claims asserted [against one defendant were not] part of that request."  *Id.*  Thereafter, the defendants filed a motion to stay the entire litigation.  *Id.*  While "the PTO ha[d] not yet determined whether to authorize the requested IPR," this Court acknowledged the reality—borne out in Exhibit E hereto—that "from a statistical perspective, the probability of a grant of review is very high."  *Id.* at n.5, 6.  Moreover, "if the PTO rejects the . . . request, any granted stay would be relatively short."  *Id.* at *5, 6, n.8 (granting a stay of the entire litigation).

The same reasons for a stay apply even more forcefully on the facts presented here.  First,

a stay was granted in *Princeton* even though the IPR petition did not request cancellation of all of the asserted claims, and so there was no possibility that any IPR proceedings could dispose of all of the issues in the litigation.  *Princeton*, 2014 WL 3819458, at *1–2.  In this case on the other hand, if the Petitions succeed, the "'litigation would be simplified because it would be concluded.'" *Princeton*, 2014 WL 3819458, at *2.

Second, because the IPR petition in *Princeton* was filed by only one of four defendants, the estoppel effect of the IPR proceedings was severely limited.  Here, in contrast, Agilent is the only defendant.

Third, the simplification of issues in *Princeton* was limited by the fact that the Court and the parties had already invested considerable resources in claim construction briefing and oral argument, and the case had been pending for over a year.  *Id.*  In this case, the complaint has not even been answered, no discovery has taken place, and no resources have yet been spent upon the significant claim construction issues in the up to 150 patent claims that Thermo may assert.

Fourth, even though the petition in *Princeton* sought review of less than three-quarters of the claims of the asserted patent, that nonetheless amounted to "such a high percentage," weighing heavily in favor of a stay.  *Id.*  The percentage of claims covered by the IPR Petitions here is much higher, namely 100%, and the simplifying potential of a stay is proportionally greater as well.

Fifth and finally, while "from a statistical perspective, the probability of a grant of review [was] very high" in *Princeton* (nearly 92% based on the statistics cited therein), it is even higher in the present case, in particular because Agilent has filed not one, but *four* IPR petitions.  Based on the most recent statistics provided by the USPTO, there is only a 30% chance that an IPR will not be instituted on a given petition in this field.  Exhibit E at 7.  The statistical likelihood that *all four* of Agilent's IPRs will be wholly rejected is negligible (an order of magnitude *less* than the

8

odds that justified a stay in *Princeton*).

Other courts in this District likewise commonly grant stays even before a decision to institute an IPR. *Neste Oil*, 2013 WL 3353984, at *5 ("[T]he statistics . . . suggest that [the PTAB] will likely grant review."); *Sunpower Corp. v. Panelclaw, Inc.*, C.A. No. 12-1633, D.I. 43 (D. Del. May 16, 2014) (holding that it "does not necessarily counsel against granting a stay" when "the [PTAB] has yet to grant" review, "since any stay would be lifted [within six months]" in the event that review is denied); *CFRD Research, Inc. v. Spotify USA Inc.*, No.14-cv-315, D.I. 49 (D. Del. June 3, 2015) ("What the PTAB will ultimately do is obviously a matter of speculation, but that does not mean the court is obligated to assume that review will not be instituted or that claims will survive. At worst, if the PTAB denies review, the parties will only endure a brief delay."). The same reasoning applies even more forcefully in this case.

### B. The Litigation Is at an Early Stage.

"[S]taying a case in its early stages in favor of an IPR proceeding can advance judicial efficiency, in that this prevents the court and parties from expending resources on claims that may later be rendered invalid." *Contour*, 2016 WL 4474340, at *3. "On the other hand, when a request for review comes after discovery is complete or nearly complete, and a trial is imminent, a stay is less likely to be granted." *Princeton*, 2014 WL 3819458, at *3. This factor examines the extent to which "the most significant case events . . . are in the future, not the past." *SenoRx, Inc. v. Hologic, Inc.*, C.A. No. 12-173, 2013 WL 144255, at *5 (D. Del. Jan. 11, 2013) (Burke, J.).

"Because [Agilent's] motion to stay was filed early in this case, this factor weighs strongly in favor of a stay." *Ever Win Int'l Corp. v. Radioshack Corp.*, C.A. No. 11-1104, 902 F. Supp. 2d 405, 507–08 (D. Del. 2012) (Burke, J.); *see also Neste Oil*, 2013 WL 3353984, at *5 ("This factor weighs strongly in favor of granting a stay [if a] case is in its infancy," as when "[t]here has been no scheduling conference, no trial date has been set, and no discovery has taken place."); *Market-*

*Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, C.A. No. 12-780, 922 F. Supp. 2d 486, 494 (D. Del. 2013) (holding the stage of litigation weighed "strongly in favor of a stay" where no conferences with the court had occurred, no schedules had been set, no substantive motions had been filed and the court had issued no substantive rulings).

Indeed, this Court and others in this District have held far more advanced cases to be in their "early stages," for example concluding that this factor "squarely favor[ed] a stay" where the defendant had answered the complaint, the Court had held a Rule 16(b) conference, and a Scheduling Order had issued, but dates for significant case events (*e.g.*, a "*Markman* hearing [and] the completion of expert discovery") were "still months away." *SenoRx*, 2013 WL 144255, at *5; *see also CallWave Commc'ns, LLC v. AT & T Mobility, LLC*, C.A. No. 12-1701, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015) (finding that this "factor favor[ed] a stay" because "expert discovery ha[d] not yet begun" and "few depositions" had been taken); *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, No. 09-cv-571, 2010 WL 2573925, at *3 (D. Del. June 25, 2010)(holding case to be in its "early stages" because even though the original deadline for fact witnesses and document production had passed, "interrogatories and depositions [we]re scheduled to take place for several more months").

The fact alone that no Answer has been filed establishes that this factor weighs "strongly" in favor of a stay. *Contour*, 2016 WL 4474340, at *3. But, in addition, "[n]o initial disclosures have been exchanged, no Scheduling Order has been entered, no discovery has occurred, claim construction has not been briefed, and neither a *Markman* hearing nor a trial date have been set." *Ever Win*, 902 F.Supp.2d at 507–08. Thus, this is the classic example of a case "in its infancy" for which the benefits of a stay—particularly, advancement of judicial efficiency and avoidance of needless efforts and costs by the Parties and the Court—are at a maximum, justifying a heavy

10

thumb on the scale in favor of granting a stay. *Neste Oil*, 2013 WL 3353984, at *5; *see also Market-Alerts*, 922 F. Supp. 2d at 494 (D. Del. 2013); *Ever Win*, 902 F. Supp. 2d at 507–08.

"Simply put, given that this case is in its early stages and considering the ability of the PTO to narrow and simplify the issues of this case . . . a stay is appropriate." *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, C.A. No. 06-514, 2007 WL 2892707, at *5 (D. Del. Sept. 30, 2007).

### C.      A Stay Will Not Unduly Prejudice Thermo.

A stay will not prejudice Thermo at all, let alone cause *undue* prejudice.  A stay would indeed allow the parties, including Thermo, to avoid the burden of duplicative, needless proceedings as set forth above.  Even if some claims survive in whole or in part and this litigation eventually resumes, this case will be simplified and streamlined by the determinations in the IPRs.

In evaluating prejudice this Court has analyzed three main sub-factors:  "(1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceedings [and] the relationship of the parties." *Princeton*, 2014 WL 3819458, at *2; *Contour*, 2016 WL 4474340, at *4.  All of these considerations weigh in favor of a stay.

### 1.      Agilent's IPR Petitions Were Timely.

A "'request for [IPR] made well after the onset of litigation followed by a [further delay before the] request to stay may lead to an inference that the moving party is seeking an *inappropriate* tactical advantage.'" *Princeton*, 2014 WL 3819458, at *2 (emphasis original); *see also Belden Techs. Inc. v. Superior Essex Commc'ns LP*, C.A. No. 08-63, 2010 WL 3522327, at *2 (D. Del. Sept. 2, 2010) (finding that requests for reexamination made 17–20 months after lawsuit was initiated, followed by a delay of an additional 12 months before filing a motion to stay 11 days before trial suggested gamesmanship and inappropriate litigation tactics).

The timing of Agilent's IPR Petitions plainly does not raise any such concerns.  All of the Petitions were filed by December 14, 2017, *less than four months* after service of the complaint

on August 18, 2017.  D.I. 7.  Four months has never been deemed an inappropriate delay under any circumstances.  But a four-month time period before requesting an IPR is especially understandable in this case, which involves four IPR petitions and 150 patent claims.  Thus, this sub-factor clearly weighs in favor of a stay.

### 2.      Agilent's Request for a Stay Is Timely.

There can be no argument that Agilent's request for a stay was unduly or tactically delayed.  The IPR Petitions were filed on December 13–14, 2017, and the Motion to Stay was filed *the next day* on December 15, 2017.  Agilent's Motion to Stay was filed at practically the earliest date that it could be filed.  Therefore, this sub-factor weighs in favor of a stay.

### 3.      The Expected Duration of the IPR Proceedings Is Reasonable in Light of the Relationship Between the Parties.

The expected length of a stay during the IPR proceedings at the PTAB is eighteen months.  *See* 35 U.S.C. 314(b), 316(b).  This Court and others in this District have repeatedly held that this is not an unreasonable length of time.  *Princeton*, 2014 WL 3819458, at *2; *Neste Oil*, 2013 WL 3353984, at *4; *Sunpower*, No. 12-cv-1633, D.I. 43 (D. Del. May 16, 2014); *CFRD Research*, C.A. No. 14-315, D.I. 49.  Even a delay of twice that duration or more "does not, by itself, amount to undue prejudice."  *Wall Corp. v. BondDesk Grp., LLC*, C.A. No. 07-844, 2009 WL 528564, at *2 (D. Del. Feb. 24, 2009) (granting stay while recognizing that the previous reexamination proceedings took on average three years).

As an initial matter, at least two of the three Asserted Patents are only months from expiration.  D.I. 1-1 at 1; D.I. 1-2 at 1.  In regard to those soon-to-expire patents, Thermo's "damages, if any, are purely monetary and can be accommodated by the award of interest if it ultimately prevails."  *Princeton*, 2014 WL 3819458, at *2.  "This factor thus weighs in favor of a stay" of litigation on those two patents, and no further analysis is required.  *Id.*

As for the third patent, any alleged direct market competition between the parties is rendered irrelevant by Thermo's delay in filing its complaint. For example, in *VirtualAgility*, the Federal Circuit acknowledged competition between the parties and credited the district court's findings of loss of market share and consumer goodwill. *VirtualAgility v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014). Still, a finding of undue prejudice was improper because the plaintiff had not sought a preliminary injunction and had delayed nearly a year before filing suit. *Id.* at 1318–19; *see also Ever Win*, 902 F. Supp. 2d at 511 ("[The Plaintiff] never sought a preliminary injunction, which suggests that any prejudice . . . is not as severe as it contends."); *Credit Acceptance Corp. v. Westlake Servs., LLC*, No. 13-cv-01523, at *6 (C. D. Cal. Dec. 30, 2013).

Far more clearly than the plaintiff in *VirtualAgility*, Thermo has demonstrated the lack of undue prejudice from a stay through its own inordinate delay in enforcing the Asserted Patents. Despite initially alleging infringement in a letter to Agilent in November 2012, Thermo refused to provide details as to *how* any of Agilent's products plausibly met the limitations of any claim or *how* any claim could plausibly be construed so as to maintain validity over the prior art. *See* D.I. 11 at 15–16. Further, Thermo ignored Agilent's request for a non-disclosure agreement with the stated purpose of enabling an "open exchange of contentions to move any [] discussions forward." *Id.* Thermo instead ensured that its claims would *not* "move . . . forward," by ignoring Agilent's letters and falling silent for *nearly five years* before filing the present complaint. *Id.*

If Thermo faced any actual risk of prejudice from delay, it would have responded to the infringement and prior art difficulties set forth in Agilent's letters by informing Agilent of its perspective on the then-existing patents. Or perhaps if Thermo faced a real risk of prejudice from delay, it might have responded by immediately filing a lawsuit—in 2012 or 2013—with a request

13

for a preliminary injunction. *See VirtualAgility*, 759 F.3d at 1318–19. But Thermo simply disappeared, intentionally encouraging Agilent to view the dispute as resolved, so that it could dedicate over two years toward refining and adding to its patents in reissue proceedings—and *another two years* toward preparing for litigation and identifying the ideal moment to strike. *Id.*; *see also* D.I. 1 at ¶¶ 9–15. All the while, according to Thermo's complaint, it accrued treble damages upon every sale by Agilent of the accused devices. *Id.* at ¶¶ 36, 62, 77, 89, 102. Thus, only one party has been unduly prejudiced by delay in this case, and that is Agilent.

Given this course of conduct by Thermo, any alleged competition between the Parties does not support a finding of undue prejudice from a relatively brief stay that would enable the Parties to focus their energies upon resolution of the numerous invalidity issues presented in the IPR Petitions, which represent, to some extent, the crux of the dispute in this case. *See VirtualAgility*, 759 F.3d at 1318; *Ever Win*, 902 F. Supp. 2d at 511; *Credit Acceptance*, No. 13-cv-01523, at *6. To the contrary, both Parties and the Court would be prejudiced by an obligation to move forward litigating all the claims (many, or all, of which are likely to be held invalid) in two separate forums. Therefore, this sub-factor, like all the other considerations and factors above, weighs in favor of a stay.

## V.    CONCLUSION

For the foregoing reasons, Agilent respectfully requests that the Court stay this action pending the IPR proceedings on the '386 patent, the '553 patent, and the '232 patent.

OF COUNSEL:

Mark Reiter
GIBSON DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX  75201
Tel:  (214) 698-3100

Brian M. Buroker
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Ave., N.W.
Washington, DC  20036-5306
Tel:  (202) 955-8500

David Glandorf
GIBSON DUNN & CRUTCHER LLP
1801 California Street, Suite 4200
Denver, CO  80202
Tel:  (303) 298-5700

Anne Y. Brody
GIBSON DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612
Tel:  (949) 451-3800

Colby A. Davis
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Tel:  (213) 229-7000

Dated:  December 15, 2017
5586622 / 44416

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:   */s/ Stephanie E. O'Byrne*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Stephanie E. O'Byrne (#4446)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    sobyrne@potteranderson.com

*Attorneys for Defendant*
*Agilent Technologies, Inc.*

15