

David M. Fry
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0705 - Direct
dfry@shawkeller.com

January 19, 2018

**BY CM/ECF AND HAND DELIVERY**
The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re:    *Thermo Fisher Scientific Inc., et al., v. Agilent Technologies, Inc.*,
             C.A. No. 17-600-LPS-CJB

Dear Judge Burke:

Pursuant to the Court's December 19, 2017 Oral Order, the parties' proposals for case narrowing are outlined in the attached Exhibit A and further discussed below.

**TFS's Proposal**

There are three asserted patents in the case, with a total of 11 independent claims across the patents and 139 dependent claims. The parties have three remaining disputes as to case narrowing: (1) the limits on asserted claims at each stage; (2) the limits on invalidity grounds/references at each stage; and (3) counting prior art grounds/references.

*Dispute 1: Limit on Asserted Claims*

TFS has agreed to narrow asserted claims in two phases: before claim construction proceedings commence and again with its final infringement contentions. The only dispute is whether the claims should be narrowed to 50 and then 20 (TFS) or 40 and then 15 (Agilent).

The initial reduction prior to the earliest claim construction exchange will reduce the number of asserted claims from approximately 150 to 50, consistent with limits imposed by the Court elsewhere. *E.g.*, *Tessera, Inc. v. Broadcom Corp.*, C.A. No. 16-380-LPS-CJB, D.I. 45 (D. Del. Oct. 7, 2016) (ordering a pre-*Markman* reduction to 46 of 138 claims (a 66% reduction)). Ordinarily, a 10-claim delta between the parties might be marginal. But Agilent is pressing TFS to narrow the asserted claims prior to and without the benefit of the PTAB's decision whether to institute Agilent's IPR petitions (which is expected around June 20). Because this is a case between direct competitors, the PTAB's institution decision could heavily influence which claims TFS decides to pursue (e.g., claims where IPR is not instituted) to secure injunctive relief. TFS should not be forced to elect fewer than 50 claims without the PTAB's institution decision.[1]

For the second reduction, Agilent proposes that TFS elect only 15 claims across the three asserted patents—only 10% of the total number of claims. TFS has already agreed to narrow its case to 20 claims, which is a good-faith, reasonable estimate of the number of claims TFS will seek to proceed to trial on given the breakdown of system/method claims, independent/dependent claims, and scope of accused products. Anything less would unduly

---

[1] Alternatively, TFS's election of claims should be after the institution decision.

SHAW KELLER LLP
The Honorable Christopher J. Burke
Page 2

restrict TFS's right to pursue remedies for infringement of its inventions by a direct competitor.

*Dispute 2: Limit on Invalidity Grounds/References*

The parties are much further apart on the second dispute. TFS proposes a reciprocal narrowing of Agilent's invalidity case to match the substantial narrowing of asserted claims that TFS has already agreed to. Agilent, on the other hand, seeks to proceed to expert discovery and pretrial with **60** prior art combinations in play and up to **25** prior art references against what it proposes to be only 15 asserted claims.

With only 11 *possible* independent claims, the claims that remain as TFS narrows its case will inevitably include dependent claims (a number of which have overlapping dependent limitations). Thus, the 3-to-1 (pre-*Markman*) and 2-to-1 (post-*Markman*) ratios of combinations-to-claims proposed by TFS gives Agilent significant flexibility in framing its invalidity case. And TFS's proposal is fully consistent with the 2.5 prior art arguments per claim adopted by the Court in *Tessera*.

By contrast, Agilent's proposal will inevitably lead to excess. If Agilent were allowed to maintain 60 prior art combinations through expert discovery, it could assert four combinations *per claim*—far higher than the Court has allowed in other cases. *See Tessera*, *supra*; *Confluent Surgical, Inc. v. HyperBranch Med. Tech., Inc.*, C.A. No. 17-688-LPS-CJB, Oral Order (D. Del. Oct. 30, 2017) (allotting 3 prior art arguments per claim on the final narrowing deadline). Moreover, Agilent proposes a staggering **25** prior art references total across only three patents and fewer than a dozen potential independent claims. But of course Agilent's trial presentation would never be so unfocused or unwieldy—instead, it appears that Agilent wants to maintain **almost double** the number of prior art references (and **quadruple** the number of combinations) as total asserted claims "in play," leaving TFS to try to prepare its case without fair notice of the prior art Agilent actually intends to rely upon.[2] This defeats the very purpose of the bilateral case-narrowing that the Court has ordered.

Compared to the substantial narrowing of asserted claims Agilent demands of TFS, Agilent's proposal to maintain a broad invalidity case is unbalanced and imposes undue burden and prejudice on TFS. Agilent should not be permitted such a gross imbalance, as it has already had a chance to pursue invalidity arguments in its IPR petitions. Thus, if it is not barred by estoppel under 35 U.S.C. § 315, Agilent's second bite at the invalidity apple should be narrowly constrained.

*Dispute 3: Counting*

"System" references should not be cumulative of references that form the basis of a "ground" or are subject to estoppel under 35 U.S.C. § 315. Here, TFS makes the common-sense proposal that Agilent not be permitted to raise arguments under the guise of a "system" that are

---

[2] Any suggestion that Agilent needs to proceed on 60 invalidity combinations and 25 references is belied by its own IPR petitions. Even in challenging **all 150 claims**, Agilent's four petitions only relied upon 19 references and 451 total combinations of anticipation and obviousness references under 35 U.S.C. §§ 102 and 103. Agilent cannot credibly argue that it needs 25 separate references and 60 combinations for 15 claims total.

merely cumulative of references that form the basis of a "ground"/"combination" or are subject to estoppel under 35 U.S.C. § 315. On the flip side, under Agilent's proposal, it would be free to rely on written references at the PTAB, have its arguments rejected, and then rely on the systems embodied in those same references in this litigation. Agilent could also rely on any number of written references to demonstrate a "system," thereby rendering meaningless the limits on the total number of prior art references.

**Agilent's Proposal**

Agilent's proposal should be adopted and Thermo's proposal rejected because: (1) Thermo's proposal does not sufficiently narrow the number of asserted claims at each stage; (2) Thermo's proposal does not provide a sufficient number of prior art combinations based on the number of asserted claims; and (3) in addition to improperly limiting Agilent's invalidity arguments, Thermo's proposal improperly seeks to limit the types of otherwise statutorily-permitted system-based invalidity arguments Agilent is permitted to make, something this Court has not previously done.

Thermo's Proposed Number of Asserted Claims and Proposed Invalidity Limits Are Excessive: Both parties have agreed to use the method of counting "combinations" set forth by this Court in *Greatbatch, Ltd. v. AVX Corp. et. al.*, C.A. No. 13-723-LPS. (D.I. 368 July 28, 2015). Given that definition, Agilent also believes that the ratio of asserted claims asserted to asserted prior art combinations used in *Greatbatch* should also apply. In that case, the plaintiff was required to finally narrow its case to 15 claims and the defendant to finally narrow to 60 prior art combinations (a ratio of 4 combinations per claim). In contrast, Thermo proposes that it be permitted to finally assert 20 claims while limiting Agilent to only 40 prior art combinations, yielding a ratio of only 2 combinations per claim—half of that provided in *Greatbatch*. That ratio is unfair and prejudicial to Agilent in its ability to cover all of the claims through the prior art being asserted. In addition, the initial round of narrowing should allow Agilent a greater ratio of combinations to asserted claims so that the second round is actually a narrowing rather than just a result of Thermo's withdrawal of certain claims. Thus, Agilent has proposed an initial 6-to-1 ratio of combinations to claims (240 combinations to 40 claims). In contrast, Thermo proposes a 3-to-1 ratio (150 combinations with 50 claims) – which is remarkably smaller than even the 4-to-1 ratio this Court ordered in the *Greatbatch* case for the final narrowing.

Furthermore, as to the number of references permitted, Agilent should be permitted, as the Court has done in prior cases, to have at least as many references as claims, which is why Agilent proposes 40 references for 40 claims in the first narrowing and 20 references for 15 claims in the second. Thermo's proposal to limit Agilent to 35 references for 50 claims and then 15 references for 20 claims is overly restrictive. Unlike the products, which Thermo alleges to be similar, Thermo has a wide range of claims with different features necessitating a larger number of prior art references. That is why Agilent is proposing 25 references in the final round of narrowing as compared to the 20 references this Court ordered in the final round of narrowing in the *Greatbatch* case.

Moreover, Thermo's effort to finally assert 20 claims is excessive. Indeed, in *Greatbatch*, the plaintiff asserted five patents and was ordered to finally narrow to 15 claims. Here, Thermo asserts only three patents, and Agilent has nonetheless proposed a final narrowing

SHAW KELLER LLP
The Honorable Christopher J. Burke
Page 4

to 15 asserted claims.  Thermo has not presented any reason why it needs to assert more claims than in the *Greatbatch* case.  Indeed, according to Thermo's Complaint, the accused products in this case "are structurally and operationally similar."  Complaint (D.I. 1) at ¶20.  Thus, the numbers for the final narrowing should be the same as in *Greatbatch,* which still affords Thermo more claims on a per patent basis.  And as to the number of initially asserted claims, 40 should be more than sufficient from 3 patents given, again, that Thermo alleges that the products are "structurally and operationally similar."

<u>Thermo's Definition of a "System" Is an Improper Attempt to Preclude Agilent from Asserting System-Based Prior Art and To Expand IPR Estoppel Beyond What the Statute and Law Provide:</u> Thermo seeks to add two significant and improper restrictions to the definition of "system."  Neither restriction is appropriate, and Thermo has not identified to Agilent any instance where this Court has imposed such restrictions in other cases.

The first restriction – "merely cumulative of references that form the basis of a Ground" introduces ambiguity and uncertainty.  It is not clear how a system can be cumulative of a patent or publication or how Thermo would measure "merely cumulative."  Furthermore, to the extent Thermo seeks to preclude Agilent from arguing that a system was on sale and/or in public use based on references that describe that system, such a prelusion is improper.  Proving that a system is on sale and/or in public use imposes one set of requirements that differs from proving that a reference qualifies as a printed publication.  Section 102 permits Agilent to raise both arguments – that a reference is a printed publication and that a system described in the reference was on sale or in public use.  Thermo's attempt to require Agilent to choose one of the two legally permitted arguments should be rejected.

The second proposed exclusion, based on 35 U.S.C. § 315, is an improper attempt to impose IPR estoppel in the context of a case narrowing order.  Here, the Court asked for briefing on case narrowing – not the scope of IPR estoppel.  The scope of IPR estoppel is not even ripe – no IPRs has been instituted and Agilent may not be asserting invalidity of a system that relates to any of the publications on which IPR is actually instituted.  Further, even if the issue was ripe, Thermo's proposal would be contrary to the IPR statute and Federal Circuit precedent in *Shaw Industries.*  35 U.S.C. § 315(b) (precluding only grounds that could have been asserted); *Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.*, 817 F.3d 1293, 1296 (Fed. Cir. 2016) (finding that only grounds actually instituted are precluded).  System prior art cannot be asserted in an IPR and therefore, no system-based arguments should be subject to IPR estoppel, regardless of the evidence used to prove that the system was on sale or in public use.

Respectfully,

*/s/ David M. Fry*

David M. Fry (No. 5486)

cc:   Clerk of the Court (via hand delivery)
      All Counsel of Record (via CM/ECF and e-mail)