

1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984 6000
www.potteranderson.com

**Stephanie E. O'Byrne**
Attorney at Law
sobyrne@potteranderson.com
302 984-6067  Direct Phone
302 658-1192  Fax

February 14, 2018

**VIA ELECTRONIC-FILING**

The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3556

> Re:  *Thermo Fisher Scientific Inc., et al. v. Agilent Technologies, Inc.*
> *(C.A. No. 17-600-LPS-CJB)*

Dear Chief Judge Stark:

The parties now have two disputes regarding the scope of a Protective Order for this case (the parties resolved the second dispute identified in their February 1, 2018 letter).  First, through the Protective Order, Thermo seeks unfettered use of Agilent's Confidential Information in any *Inter Partes Review* (IPR) at the Patent Trial and Appeals Board (PTAB).  Because the PTAB has yet to institute an IPR, at this stage of the case, the Protective Order should not provide what amounts to a blanket cross-use provision; instead, the Protective Order should include a procedure by which a party may request amendment of the Protective Order upon the satisfaction of specific criteria, e.g., the PTAB institutes one or more IPRs ***and*** the PTAB enters its own protective order that provides equivalent protections to those in this Court's protective order, including destruction of confidential information at the conclusion of the proceedings. Next, Agilent agreed to Thermo's request that *two* in-house counsel have access to confidential information otherwise accessible to only outside counsel.  Thermo, however, seeks to undermine the numerical limitation by allowing a party to substitute in-house counsel not only if one of those attorneys leave the employ of the party, but also if one of the attorneys stops having responsibility for the litigation.  Given the parties competitive relationship, this amorphous standard does not alleviate Agilent's concern of having more than two Thermo in-house attorneys having had access to its confidential information, regardless of whether they are still working on the litigation.  Agilent requests, instead, that substitutions be permitted only if the attorney ceases to be employed by the party.

<u>Confidential Information Produced Here Should Not Be Used in any IPR Proceeding Unless those Proceedings Guarantee That the Confidential Information Will Not Become Public:</u>
Thermo improperly proposes in paragraph 2 of the Protective Order that Confidential – Outside Attorney's Eyes Only (COAEO) and Confidential – Outside Attorney's Eyes Only – Source Code (COAEO-Source Code) can be used in any IPR.  With no IPR having been instituted, this request should be denied because it fails to afford Agilent with any protections that Agilent's COAEO and COAEO-Source Code information provided to the PTAB will not become public.

The Honorable Leonard P. Stark
February 14, 2018
Page 2

Until it is clear how the PTAB will protect a parties' confidential information, allowing a blanket cross-use is premature.  And this Court's decision in *454 Life Sciences Corporation v. Ion Torrent Systems, Inc.*, C.A. No. 15-595-LPS (D.I. 47) is not to the contrary.  There, the Court allowed use of confidential information produced in the litigation in an IPR—*after* institution of the IPR—but neither the parties nor the Court addressed the PTAB's discretionary procedures for treatment of confidential information.  Indeed, while the PTAB Trial Practice Guide allows for entry of a protective order and the filing of confidential information under seal, what happens to that confidential information at the PTAB differs dramatically from what happens in district court litigation.  77 Fed. Reg. 48756, 48760 (Aug. 14, 2012).  Importantly, the PTAB Trial Practice Guide makes clear that "[c]onfidential information that is subject to a protective order ordinarily would ***become public*** 45 days after denial of a petition to institute a trial or 45 days after final judgment in a trial.  There is an expectation that information will be made public where the existence of the information is referred to in a decision to grant or deny a request to institute a review or is identified in a final written decision following a trial."  *Id.* at 48761 (emphasis added).  Stated succinctly, and unlike district court practice where confidential information is routinely redacted, if the PTAB relies on Agilent confidential information, by default, that information becomes public.  Again, neither the parties nor the Court in *454 Life* addressed this significant point.  Agilent has invested millions in developing complex mass spectrometry technology.  Its confidential sales, marketing, contracts and source code should not be made public at the discretion of one of its competitors by virtue of the PTAB's default publicity policy.  A ruling from this Court allowing unfettered use in the PTAB could be devastating to Agilent, allowing a direct competitor to publish confidential Agilent information through the PTAB's "expectation" of publicity.

While the PTAB rules allow a party to move to expunge information from the PTAB record, that remedy is discretionary with the PTAB panel and the moving party must overcome the PTAB's "expectation that [relied upon] information [will] become public." *Id.*; 37 C.F.R. § 42.56.  During the parties' meet and confer discussions, Thermo indicated that it expected to use Agilent confidential information to argue commercial success in opposition to an obviousness challenge; to make such an argument, Thermo would likely present Agilent's confidential technical information to allege that Agilent actually practices the claim and Agilent's confidential financial and marketing information to show that alleged infringement contributed to the success of the Agilent product.  Until it is known whether the particular panel of PTAB judges assigned to the IPRs are willing to seal *and* expunge Agilent's COAEO and COAEO-Source Code information, the risk of public disclosure is too high and this Court should defer the issue.  Indeed, procedural rulings by the PTAB vary significantly among the 250+ PTAB administrative patent judges and there are very few precedential rulings from that body.  To date, there is no precedential decision indicating whether expungement will be granted when highly confidential sales or technical information (including source code) is cited and relied upon by one of the parties to the IPR proceeding.  And, individual PTAB panels have treated the issue differently and rejected attempts to expunge information important to their decision.  *See, e.g., RPX Corp. v. VirnetX Inc.*, IPR2014-00171 (Paper 62, Sep. 9, 2014) (Ex. B) (denying blanket request to expunge, but allowing some, but not all, information to be expunged); *Intri-Plex Technologies, Inc. et al. v. Saint-Gobain Performance Plastics Rencol Ltd.*, IPR2014-00309 (Paper 92, Oct. 2, 2015) (Ex. C) (denying post-IPR-trial motion to expunge customer names and description of manufacturing processes).

The Honorable Leonard P. Stark
February 14, 2018
Page 3

Given the real risks and uncertainties, rather than including a blanket cross-use, the Protective Order should permit either party to move to amend the Protective Order after (1) an IPR has been instituted, and (2) *in that IPR*, the PTAB panel has entered an order that agrees to expunge confidential information. Confidential information may only be used in an IPR that provides such protections.

<u>Substitution of In-House Counsel</u>. Thermo requested, and as a matter of compromise, Agilent agreed, to have *two* in-house attorneys included in the set of attorneys that can access COAEO and COAEO-Source Code information. Thermo, however, also proposed that the parties be permitted to substitute those two attorneys "should the need arise." Ex. A at ¶2(d). To this Agilent could not agree because such an amorphous standard would enable virtually unlimited substitution of in-house counsel. Again, as a compromise, Agilent agreed that if the designated in-house attorneys left the employment of the party, then that would justify substitution. Thermo however, now wants to be able make a substitution not only if the in-house attorney leaves the employment of the party but also if another vague standard is met – if the attorney no longer has responsibility for the litigation. Such a standard is difficult for Agilent to evaluate from the outside and understand whether that attorney really has no involvement in the litigation. But even if an attorney no longer has responsibility for the litigation, he or she might still be involved in making decisions on what patents Thermo should file, how to draft contracts in competition with Agilent or a host of other activities that could be harmful to Agilent. Likewise, Thermo's proposal places no limitation on the number of times it may switch responsibilities of its in-house counsel, thus potentially providing many Thermo attorneys with intimate knowledge of Agilent's technical materials, its marketing strategies, its business relationships with its customers and its confidential sales information. Allowing two in-house counsel at any one time to review COAEO and COAEO-Source Code is adequate to allow Thermo to advise its clients on the merits of the case. Should one of those attorneys leave employment at Thermo, then it can substitute another attorney that meets the other requirements of the protective order. But this Court should reject Thermo's request to expand the bases for a substitution.

Respectfully,

*/s/ Stephanie E. O'Byrne*

Stephanie E. O'Byrne

SEO/msb/5622845/44416
Enclosures
cc: Clerk of the Court (via hand delivery) (w/encs.)
      Counsel of Record (via electronic mail) (w/encs.)