

David M. Fry
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0705 - Direct
dfry@shawkeller.com

February 14, 2018

**BY CM/ECF AND HAND DELIVERY**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

Re:   *Thermo Fisher Scientific Inc., et al., v. Agilent Technologies, Inc.*,
    C.A. No. 17-600-LPS-CJB

Dear Judge Stark:

I write on behalf of Plaintiffs Thermo Fisher Scientific Inc. and Thermo Fisher Scientific (Bremen) GMBH (hereinafter "Thermo Fisher" or "Plaintiffs"), to request resolution of two remaining disputes as to the protective order that will govern in this case. Specifically, Plaintiffs request that: (i) the Court permit the use of documents produced in this litigation in any *inter partes* review ("IPR") proceedings requested by Agilent Technologies Inc. (hereinafter "Agilent");[1] and (ii) the Court allow the parties to substitute their designated in-house counsel if the designated counsel ceases to have job responsibilities relating to this litigation. The parties have resolved their prior dispute as to the scope of the prosecution bar. A draft protective order showing the parties' respective positions is attached as Exhibit A.

**I.    The Protective Order Should Allow For The Use Of Confidential Materials Produced In This Litigation In Related *Inter Parties* Review Proceedings.**

If Agilent's IPR petitions are instituted, the Patent Trial and Appeal Board ("PTAB") should have access to relevant documents produced as part of this litigation without the protective order in this case acting as an artificial barrier. There is no meaningful dispute that, should an IPR be instituted, documents produced during this litigation will be directly relevant to the determination of several objective indicia of non-obviousness, including at least the commercial success of Thermo Fisher's inventions and failure of others. Nor can there be a meaningful dispute that both sides should be permitted to rely on such information at the PTAB, and the PTAB should have the benefit of the litigation record in resolving Agilent's validity challenges.

Agilent's proposal would unnecessarily kick the can down the road, forcing Thermo Fisher to seek modification of the protective order after the PTAB decides whether to institute review. The PTAB is more than capable of deciding whether—and to what extent—discovery materials from litigation may be used in an IPR. It is for this reason that this Court has consistently rejected attempts to prohibit the use of litigation materials in IPR proceedings, choosing instead to let the PTO decide on its own what materials can be used and what the confidentiality status of such materials ought to be. *See, e.g. 454 Life Scis. Corp. v. Ion Torrent*

---

[1]   Just last week, Agilent filed counterclaims asserting its own patents. In the event that Thermo Fisher seeks IPR on Agilent's patents, the same standards should of course apply.

SHAW KELLER LLP
The Honorable Leonard P. Stark
Page 2

*Sys., Inc.,* C.A. No. 15-595-LPS-CJB (D. Del. June 20, 2016), D.I. 47 (determining that "[w]hat may be used in an IPR, and what confidentiality status it will have, are matters for the PTO to decide"); *Pregis Innovative Packaging Inc. v. Sealed Air Corp.,* C.A. No. 13-1084-LPS (D. Del. Dec. 16, 2013), D.I. 36 (agreeing that "there is no reason for this Court to place any restriction on what material the USPTO/PTAB may wish to consider in connection with IPR proceedings pending before it").

## II. The Parties' Have Reached Agreement As To The Scope Of The Prosecution Bar.

The parties agree that the prosecution bar will not bar counsel from participating in any post-grant proceedings of any kind, except that the patent owner's counsel with access to confidential information will not participate in or provide advice regarding the amendment of claims in any post grant proceeding. The agreed-upon language is reflected in Exhibit A.

## III. The Parties Should Be Allowed To Designate Substitute In-House Counsel If Designated Counsel No Longer Has Job Responsibilities Relating To This Litigation.

The parties agree that up to two designated in-house counsel can have access to protected material. The parties' dispute here is whether designated in-house counsel can be substituted only if they leave the company (Agilent's position), or if they can be substituted when they either leave the company or change roles such that they are no longer involved in managing the litigation (Thermo Fisher's position).

The rationale for Thermo Fisher's proposal is simple: in-house lawyers (especially at large companies with large in-house legal teams like Agilent and Thermo Fisher), do not stay in the same role forever. If one of its two in-house designees moves to another in-house position such that they no longer manage the litigation, a party should not lose that "slot." Agilent's concern appears to be that this may lead to a revolving door of Thermo Fisher in-house attorneys gaining access to Agilent confidential information and then moving to other positions with Thermo Fisher. Agilent's concern is unrealistic. Thermo Fisher would be disadvantaged by constantly changing in-house designees and would do so only if necessary to management of the case. Moreover, any in-house designees that move to other positions within Thermo Fisher would remain bound by the terms of the protective order.

Respectfully,

*/s/ David M. Fry*

David M. Fry (No. 5486)

cc: Clerk of the Court (via hand delivery)
All Counsel of Record (via CM/ECF and e-mail)